Leonard H. Smith
Crowley Fleck PLLP
490 North 31st Street, Suite 500
Billings, MT 59101
406-252-3441
lsmith@crowleyfleck.com

Thomas E. Birsic, *Pro Hac Vice*
Jeffrey J. Meagher, *Pro Hac Vice*
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222-2613
412-355-6500
Thomas.Birsic@klgates.com
Jeffrey.Meagher@klgates.com

*Attorneys for Murphy Exploration*
*& Production Company, Murphy Oil*
*USA, Inc., and Murphy Oil Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MURPHY EXPLORATION & PRODUCTION COMPANY, MURPHY OIL USA, INC., and MURPHY OIL CORPORATION,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>BALLARD PETROLEUM HOLDINGS, LLC,<br><br>    Third-Party Defendants. | Cause No. CV-20-67-BMM<br>Hon. Brian M. Morris<br><br><br>**DECLARATION OF LAURA PAPPENFUS IN SUPPORT OF MURPHY'S OPPOSITION TO USF&G'S MOTION FOR SUMMARY JUDGMENT** |

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

Intervenor Plaintiff / Counterclaim
Defendant,

v.

BALLARD PETROLEUM
HOLDINGS, LLC,

Intervention Defendant / Counterclaim
Plaintiff / Third-Party Plaintiff /
Counterclaim Defendant,

v.

VIGILANT INSURANCE COMPANY
and FEDERAL INSURANCE
COMPANY,

Third-Party Defendant /   Counterclaim
Plaintiff.

I, Laura Pappenfus, declare under penalty of perjury as follows:

**A.    Background**

1.    I am a Senior Attorney for Murphy Oil Corporation.

2.    In my capacity as Senior Attorney for Murphy Oil Corporation, I am responsible for managing the Montana Lawsuits, the Ballard Arbitration and related insurance coverage matters.[1]

3.    I am a resident of Houston, Texas, over the age of eighteen years, and competent to make this declaration based on personal knowledge.

4.    I submit this Declaration in support of Murphy's Brief in Opposition to USF&G's Motion for Summary Judgment Against Murphy.

**B.    USF&G May Not Avoid its Contractual Duty to Defend Murphy by Arguing that Murphy Breached its Duty to Cooperate**

5.    The USF&G Policies provide, in relevant part, as follows:

> *[Murphy] shall cooperate with [USF&G] and, upon [USF&G's] request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to [Murphy] because of bodily injury or property damage with respect to which insurance is afforded under this policy . . . .*

*See, e.g.*, 1970-1971 USF&G Policy, Conditions, 4(c). A true and correct copy of the 1970-1971 USF&G Policy is attached as Exhibit A.

---

[1] I incorporate the defined terms from my Declaration ISO of Murphy's Motion for Partial Summary Judgment [Doc. No. 361].

6.     USF&G issued the USF&G Policies to Murphy in Arkansas. *See, e.g.*, 1970-1971 USF&G Policy (Ex. A), Declarations.

7.     Murphy tendered the Montana Lawsuits to USF&G on October 15, 2020, but USF&G initially denied coverage and did not agree to defend Murphy subject to a reservation of rights until September 2, 2021. *See* 9/2/21 Letter from J.Schlerf (USF&G) to T.Birsic (Murphy). A true and correct copy of the 9/2/21 Letter (MURPHY_00017239-17248) is attached as Exhibit B.

8.     Murphy submitted its first batch of defense invoices to USF&G on October 20, 2021, but USF&G refused to reimburse Murphy for the full amount of its defense costs and Murphy spent the next several months pursuing payment. *See* 10/20/21 Letter from T.Birsic (Murphy) to J.Schlerf (USF&G). A true and correct copy of the 10/20/21 Letter (MURPHY_00017937-17938) is attached as Exhibit C.

9.     USF&G did not issue its first check to Murphy for partial payment of defense costs until April 11, 2022 (more than 17 months after Murphy tendered the Montana Lawsuits to USF&G).

10.     On April 26, 2022 (a few weeks after USF&G made its first partial payment), USF&G asked Murphy to provide its first status report regarding the Montana Lawsuits. See 4/26/22 Email from J.Schlerf (USF&G) to J.Meagher (Murphy). A true and correct copy of the 4/26/22 Email (MURPHY_00017231-17232) is attached as Exhibit D.

11.    On June 8, 2022, Murphy's defense counsel provided a written status report which informed USF&G that Murphy had filed "crossclaims or third-party claims" against certain "potentially liable parties," including Ballard. *See* 6/8/22 Letter from J.Nelson (Murphy) to J.Schlerf (USF&G) at MURPHY_00017684-17685. A true and correct copy of the 6/8/22 Letter is attached as Exhibit E.

12.    On January 4, 2023, the arbitration panel issued its order regarding Ballard's defense and indemnity obligations.

13.    Murphy provided USF&G with a copy of the panel's order on January 16, 2023. *See* 1/16/23 Email from J.Meagher (Murphy) to J.Schlerf (USF&G). A true and correct copy of the 1/16/23 Email (MURPHY_00017211-17214) is attached as Exhibit F.

14.    Murphy's email informing USF&G about the panel's order assumed prior knowledge of the Ballard Arbitration and USF&G's response did not suggest otherwise. *See* 1/23/23 Email from J.Schlerf (USF&G) to M.Jackson (Murphy) at MURPHY_00021113. A true and correct copy of the 1/23/23 Email (MURPHY_00021113-21114) is attached as Exhibit G.

15.    On April 4, 2022, Ballard offered to defend Murphy, but only against negligence claims (the plaintiffs also alleged claims for nuisance, trespass, strict liability and wrongful occupation) and Ballard only offered to pay Murphy's local counsel to defend the lawsuits. *See* 4/4/22 Letter from R.Sterup (Ballard) to L.Smith

(Murphy). A true and correct copy of the 4/4/22 Letter (MURPHY_00017109-17110) is attached as Exhibit H.

16.     On July 10, 2023, Ballard offered to pay Murphy's "reasonable" defense fees in the Zimmerman Lawsuit, but only "to the extent those fees are not reimbursed by insurers and/or within [Murphy's] coverage provided by [USF&G] or other insurers." *See* 7/10/23 Letter from D.Ballard (Ballard) to M.Jackson (Murphy) at MURPHY_00017123. A true and correct copy of the 7/10/23 Letter (MURPHY_00017123-17124) is attached as Exhibit I.

17.     Murphy disclosed both offers to USF&G on July 12, 2023 (two days after Ballard made the second offer). *See* 7/12/23 Email from J.Meagher (Murphy) to J.Schlerf (USF&G) and 7/12/23 Email from M.Jackson (Murphy) to J.Schlerf (USF&G). True and correct copies of the 7/12/23 Emails (MURPHY_00017119-17124) and (MURPHY_00017104-17107) are attached as Exhibits J and K.

18.     Ballard's July 14, 2023 settlement offer was completely unacceptable (Ballard offered to pay Murphy $600,000 if Murphy dismissed its claim for interim damages and the Ballard Arbitration) and would have required Murphy to release USF&G's subrogation claim against Ballard. *See* 7/14/23 Letter from S.MacIntyre (Ballard) to J.Nelson (Murphy). A true and correct copy of the 7/14/23 Letter is attached as Exhibit L.

19.    Murphy achieved a much better result in the Ballard Arbitration when the panel awarded Murphy approximately $2.8 million in interim damages without releasing USF&G's subrogation claim. *See* 1/22/25 Order on Murphy's Motion for Interim Damages at p. 22. A true and correct copy of the 1/22/25 Order is attached as Exhibit M.

20.    Murphy submitted its defense costs through April 30, 2023 to Ballard in the Ballard Arbitration and Ballard refused to pay them.

21.    Murphy invited USF&G to intervene in the Lockman Lawsuit because Ballard filed a motion in which Ballard argued that it should not be required to indemnify Murphy for defense costs paid by USF&G. *See* 7/7/23 Email from J.Nelson (Murphy) to J.Schlerf (USF&G). A true and correct copy of the 7/7/23 Email (MURPHY_00017133) is attached as Exhibit N.

22.    Murphy did not invite USF&G to file a subrogation claim against Ballard before Murphy had been made whole.

23.    Murphy: (a) provided USF&G with notice of the Montana Lawsuits and the Ballard Arbitration; (b) gave USF&G periodic status reports regarding the Montana Lawsuits and the Ballard Arbitration; (c) sent USF&G copies of important motions and orders; (d) responded to USF&G's reasonable requests for information; and (e) sought USF&G's consent before settling the O'Connor claims.

**C.    USF&G Breached its Duty to Defend Murphy by Refusing to Reimburse Murphy for Reasonable and Necessary Defense Costs**

24.    The plaintiffs in the Montana Lawsuits allege (Zimmerman) or alleged (Lockman) environmental contamination caused by Murphy's historical operations in the East Poplar Oilfield over several decades.

25.    The plaintiffs are (Zimmerman) or were (Lockman) represented by three well-respected law firms that were originally seeking more than $100 million in restoration damages from Murphy.

26.    The Montana Lawsuits involve multiple plaintiffs, multiple defendants, cross-claims, third-party claims and corporate bankruptcy proceedings involving one of the defendants (Samson Resources) and an arbitration.

27.    Murphy retained two law firms to defend the Montana Lawsuits: Foster Garvey and Crowley Fleck.

28.    Foster Garvey serves as lead counsel, while Crowley Fleck serves as local counsel.

29.    Foster Garvey has represented Murphy in matters related to the East Poplar Oilfield for over three decades.

30.    Crowley Fleck also has a longstanding relationship with Murphy in Montana and provides important local knowledge and experience.

31.    Foster Garvey agreed to significant rate discounts at the beginning of the Montana Lawsuits.

6

32.    Murphy's lead attorney, for example, had a standard hourly rate of $680 in 2021, but he agreed to only charge Murphy $550 per hour (a 20 percent discount).

33.    Because the plaintiffs in the Montana Lawsuits alleged environmental contamination caused by Murphy's historical operations in the East Poplar Oilfield over several decades, Murphy's defense counsel had to research Murphy's operations going back to the 1950s, a task made even more difficult than it might otherwise have been because Murphy sold its interest in the East Poplar Oilfield (along with records related to Murphy's operations at the oilfield) to Ballard in 2002.

34.    Murphy also had to address other potentially responsible parties, including Samson Resources (which filed for bankruptcy) and Ballard.

35.    Murphy's pursuit of a third-party claim against Ballard required a significant amount of time and effort from Murphy's attorneys because Ballard insisted on arbitration and then disputed its contractual duty to defend, indemnify and hold Murphy harmless under the PSA.

36.    The arbitration panel eventually ruled that Ballard has a duty to defend, indemnify and hold Murphy harmless in connection with the Montana Lawsuits, but Ballard continues to pursue legal arguments to avoid its contractual obligations to Murphy under the PSA.

37.    The plaintiffs in the Montana Lawsuits were originally seeking more than $100 million in restoration damages from Murphy. *See* Plaintiffs' Initial

Disclosure at pp. 13-15. A true and correct copy of Plaintiffs' Initial Disclosure is attached as Exhibit O.

38.    The Zimmerman plaintiffs recently agreed to drop their groundwater restoration claim, but they are still seeking approximately $36 million in soil restoration damages.

39.    Because the Ballard Arbitration involves defense and indemnity obligations related to the Montana Lawsuits, there is also a significant amount of money at stake in the arbitration.

40.    Given the complexity and the amount of money at stake in the Montana Lawsuits and the Ballard Arbitration, Murphy needed highly-skilled attorneys with significant environmental litigation experience.

41.    The lead attorneys at Foster Garvey (John Nelson) and Crowley Fleck (Leonard Smith) are both highly-skilled attorneys with significant environmental litigation experience who are supported by highly-skilled and experienced legal teams.

42.    Mr. Nelson and Mr. Smith (and their respective legal teams) are well-respected in the legal profession.

43.    Ballard settled the Lockman Lawsuit without any contribution from Murphy.

44.     In addition, there were no negative legal rulings in the Lockman Lawsuit that could impact the Zimmerman Lawsuit.

45.     Murphy recently settled the O'Connor claims in the Zimmerman Lawsuit without any contribution from Ballard, but Murphy seeks indemnification for that settlement from Ballard in the Ballard Arbitration.

46.     The panel in the Ballard Arbitration recently awarded Murphy approximately 90 percent of its attorneys' fees through April 30, 2023 following briefing and a hearing in which Ballard made many of the same arguments as USF&G regarding the reasonableness of those costs. *See* 1/22/25 Order on Murphy's Motion for Interim Damages (Ex. M).

47.     The panel analyzed Murphy's attorneys' fees using the *Plath* factors and awarded Murphy approximately $2.8 million for defense costs paid by Murphy through April 30, 2023. *See* 1/22/25 Order on Murphy's Motion for Interim Damages (Ex. M).

48.     Unlike USF&G, Ballard did not object to the rates charged by Crowley Fleck, but Ballard argued that Foster Garvey's fees should be reduced by almost 80 percent. *See* 1/22/25 Order on Murphy's Motion for Interim Damages (Ex. M) at p.15 ("Ballard does not object to the rates charged by Crowley Fleck . . . .") and p. 21 (finding the recommendation to cut the fees Murphy paid to Foster Garvey by "nearly 80% to be excessively harsh.").

49.    The panel mostly rejected Ballard's argument and awarded Murphy 85 percent of Foster Garvey's fees. *See* 1/22/25 Order on Murphy's Motion for Interim Damages (Ex. M) at p. 21.

50.    USF&G eventually agreed to defend Murphy subject to a reservation of rights, but USF&G refused to reimburse Murphy for a portion of its defense costs because USF&G argued that the rates Murphy had agreed to pay were higher than the rates USF&G paid attorneys involved in "similar litigation in the same geographic area." *See, e.g.*, 1/19/22 Letter from J.Schlerf (USF&G) to T.Birsic (Murphy) at MURPHY_00017236. A true and correct copy of the 1/19/22 Letter (MURPHY_00017235-17237) is attached as Exhibit P.

51.    For example, Murphy had agreed to pay Foster Garvey up to $550 per hour for work performed by partners, but USF&G would only reimburse Murphy at a rate of $425 per hour. *See, e.g.*, 1/19/22 Letter from J.Schlerf (USF&G) to T.Birsic (Murphy) (Ex. P) at MURPHY_00017236.

52.    USF&G also refused to provide Murphy with additional information to support its claim that it paid lower rates to attorneys involved in "similar litigation in the same geographic area." *See* 8/12/22 Letter from J.Schlerf (USF&G) to T.Birsic (Murphy) at MURPHY_00022914. A true and correct copy of the 8/12/22 Letter (MURPHY_00022913-22915) is attached as Exhibit Q.

53.    The Foster Garvey litigation team primarily included seven lawyers and three paralegals.

54.    While additional attorneys and paralegals may have billed time to the Montana Lawsuits over the past four years, most had a very limited role.

55.    The arbitration panel addressed Ballard's "overstaffing" argument in its Order on Murphy's Motion for Interim Damages: "The record shows that only four Foster Garvey lawyers spent more than 100 hours on both litigations through April 30, 2023, in aggregate constituting the large bulk of the lawyer time billed. The total number of other lawyers and paralegals involved was swelled by a large number who devoted relatively small amounts of time." *See* 1/22/25 Order on Murphy's Motion for Interim Damages (Ex. M) at p. 16.

56.    Murphy requests full reimbursement of all costs reflected in Foster Garvey and Crowley Fleck invoices submitted to USF&G. *See, e.g.*, 2/6/24 Letter from B.Johnson (Murphy) to J.Schlerf (USF&G). A true and correct copy of the 2/6/24 Letter (MURPHY_00019390) is attached as Exhibit R.

57.    Murphy continued to submit defense costs to USF&G for reimbursement from January 2023 through October 2023.

58.    Murphy objected to USF&G's pursuit of a subrogation claim against Ballard and asked USF&G to pay fees and costs related to the Ballard Arbitration on November 28, 2023. *See* 11/28/23 Letter from J.Meagher (Murphy) to

11

R.Heuwinkel (USF&G) at MURPHY00018412-18413. A true and correct copy of the 11/28/23 Letter (MURPHY_00018412-18413) is attached as Exhibit S.


April 25, 2025

/s/ Laura Pappenfus