# __Exhibit B__

# TRAVELERS

**Janis E. Schlerf**
**Senior Account Executive**
443-353-2220
e-mail: jschlerf@travelers.com

111 Schilling Road
Hunt Valley, Maryland 21031

September 2, 2021

Via Email

Thomas E. Birsic
Partner
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
Thomas.birsic@klgates.com

RE:

**Insured:**    Murphy Oil Corporation ("Murphy Oil")
**Lawsuits:**   <u>Zimmerman, Inc. et al v. Murphy Exploration & Production Co, Inc. et al.</u>
<u>USDC, State of Montana, Great Falls Division</u>, Case No. CV-20-68-GF-
BMM-JTJ ("<u>Zimmerman</u> Lawsuit")

<u>Michael E. Lockman, et al., v. Pioneer Natural Resources, USA, Inc. et al.  al</u>
<u>v. Murphy Exploration & Production Co, Inc. et al. USDC, State of Montana,</u>
<u>Great Falls Division</u>, Case No. 4:20-cv-00067-BMM-JTJ
 ("<u>Lockman</u> Lawsuit")

Dear Mr. Birsic:

I am writing as follow-up to our prior correspondence of May 19, 2021, and in response to your
correspondence of July 9, 2021.

You have requested United States Fidelity and Guaranty Company ("USF&G") reconsider its prior
declination of coverage and provide a defense to Murphy Oil.    We disagree with your contention
that the <u>Zimmerman</u> and <u>Lockman</u> Lawsuits do not involve "substantially similar facts" as those that
were at issue in the Union County declaratory judgment action.  The Orders granting USF&G
summary judgment in that case involved the same contaminated area and some of the same policies
at issue here.  Nevertheless, in response to your letter, we have again reviewed the <u>Zimmerman</u>
Lawsuit and <u>Lockman</u> Lawsuit (the "Montana Lawsuits") and the policies listed in Exhibit A,
including the copy of the 1970-71 policy that you provided.  USF&G hereby advises that we agree to
participate in the defense of Murphy Oil in the Montana Lawsuits, under a full reservation of rights,

MURPHY_00017239

under policies effective 6/1/1954 to 6/1/55, 6/1/1957 to 6/1/69, 6/1/70 to 6/1/74, and 6/1/1982 and 6/1/1983 to 6/1/1986 (the "Policies"). Please be advised that USF&G's determination in this regard shall not be construed as a waiver of our rights to rely upon the previously issued Orders or other defenses set forth in my May 19, 2021 letter (all of which are incorporated by reference herein.)

Please note that the property damage limits of liability contained in the 6/1/69 to 6/1/70, 6/1/74-6/1/75, and 6/1/1982-6/1/1983 policies has been fully exhausted pursuant to the March 1995 Agreement of Settlement, Compromise and Release between USF&G and Murphy Oil . Thus, we will not participate in Murphy's defense under those policies.

Please also note that to date we have not been able to locate a copy of the alleged June 1, 1955 to June 1, 1956 policy issued to Murphy Oil. Please provide us with a copy of such policy if you have it in your possession.

With respect to the policies listed effective 6/1/1986 and forward, as set forth more fully below, all of those policies contain a pollution exclusion that bars all coverage for the Lawsuits.

As you are aware, Plaintiffs filed the Montana Lawsuits seeking damages caused by defendants' oil and gas exploration and production and activities that allegedly damaged their land and legal interests therein located on Plaintiffs' real property located in Roosevelt County, Montana. Plaintiffs also allege that their real properties has been impacted and contaminated by Defendants' releases of petroleum products and oil production wastes. In addition, the Plaintiffs specifically state that Murphy Oil does and did business in and around the East Poplar Oilfield and is responsible for the contamination of Plaintiffs' properties. Based upon the allegations of the complaint and the exhibits, it appears that Murphy Oil performed operations at the East Poplar Oilfield beginning in the early 1950s.

Our offer to participate in Murphy's defense of the Montana Lawsuits under the above-referenced policies shall not be deemed or construed as a waiver of any rights or conditions under the policies issued by us, or as an expansion of the duties owed by us under those policies. This defense is subject to the following specific reservations (as well as any reservation raised in our letter of May 19, 2021):

- Should our investigation or discovery determine that the allegations do not constitute an "accident" or "occurrence" as defined in the insurance policies, no coverage will be provided.

- Should our investigation or discovery determine that the allegations do not constitute a claim for damages because of "property damage" as that term is defined in the insurance policies, no coverage will be provided.

- No coverage is available for any property damage that did not take place during the respective policy periods of the Policies. [Check policy wording for the wording in the accident policies but I think the damage still must take place during the policy period.]

- No coverage is provided for any property damage which was either expected or intended from the standpoint of the insured.

- In accordance with policy provisions and/or applicable case law, coverage may not apply to any punitive damages, fines or penalties alleged or awarded in the captioned lawsuit.

- Coverage will not be provided for any loss, cost, or expense alleged to have been or to be incurred in connection with any claim for equitable relief.

- Any USF&G policy issued on or after June 1, 1971 and/or prior to June 1, 1986 excludes coverage for bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. We specifically reserve our right to disclaim coverage for the Montana Lawsuits pursuant to this exclusion and in accordance with the previously issued Orders.

The policies from June 1, 1954 to June 1, 1956 contain the following endorsement:

**EXCLUSION OF COVERAGE FOR LIABILITY**
**RESULTING FROM UNDERGROUND DAMAGE (by endorsement C & L 1262-A)**

It is agreed that:

1. Such insurance as is afforded by the policy for Property Damage Liability with respect to the operations described in this endorsement, including such operations performed for the Named Insured by independent contractors, does not apply.

   (a) to injury to or destruction of the underground property;

   (b) to the increased cost of reducing any underground property to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize loss or damage to property resulting from acts or omissions causing underground damage.

2. The term "underground property", as used in this endorsement, means oil, gas, water or other mineral substances, including any title, interest or estate therein, which, at the time of the act or omission causing loss of, injury to or destruction of such substance, or loss, impairment, or reduction of the value of such title, interest or estate, has not been reduced to physical possession above the earth's surface; such term also means any well, hole, formation, strata or area beneath the surface of the earth in or through which exploration for or production of any such substance is carried on, or any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment which is located in any such well or hole beneath the earth's surface at the time of the accident causing injury or destruction.

DESCRIPTION OF OPERATIONS

Gas Lease Operators - all operations
Gasoline Recovery - from casing heads or natural gas
Oil Lease Operators - all operations
Oil or Gas Wells - cleaning and swabbing - by contractors
Oil or Gas Wells - drilling or redrilling, installation or recovery or casing
Gas Lease Operators - natural gas - all operations
Oil or Gas Well Shooting

The policies from June 1, 1956 to June 1, 1961 contain the following endorsement:

**EXCLUSION OF COVERAGE FOR LIABILITY
RESULTING FROM UNDERGROUND DAMAGE (by endorsement C & L 1262-B)**

It is agreed that:

1. Such insurance as is afforded by the policy for Property Damage Liability with respect to the operations described in this endorsement, including such operations performed for the Named Insured by independent contractors, does not apply.

    (a) to injury to or destruction of the underground property;

    (b) to the increased cost of reducing any underground property to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize loss or damage to property resulting from acts or omissions causing underground damage.

2. The term "underground property", as used in this endorsement, means oil, gas, water or other mineral substances, including any title, interest or estate therein, which, at the time of the act or omission causing loss of, injury to or destruction of such substance, or loss, impairment, or reduction of the value of such title, interest or estate, has not been reduced to physical possession above the earth's surface; such term also means any well, hole, formation, strata or area beneath the surface of the earth in or through which exploration for or production of any such substance is carried on, or any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment which is located in any such well or hole beneath the earth's surface at the time of the accident causing injury or destruction.

The policies from June 1, 1961 to June 1, 1967 contain the following endorsement:

**EXCLUSION OF COVERAGE FOR LIABILITY
RESULTING FROM UNDERGROUND DAMAGE (by endorsement C & L 1262-C)**

It is agreed that:

1. <u>Such insurance as is afforded by the policy for Property Damage Liability with respect to the operations described in this endorsement, including such operations performed for the Named Insured by independent contractors, does not apply.</u>

(a) to injury to or destruction of the underground property;

(b) to the increased cost of reducing any underground property to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize loss or damage to property resulting from acts or omissions causing underground damage.

2. The term "underground property", as used in this endorsement, means oil, gas, water or other mineral substances, including any title, interest or estate therein, which, at the time of the act or omission causing loss of, injury to or destruction of such substance, or loss, impairment, or reduction of the value of such title, interest or estate, has not been reduced to physical possession above the earth's surface; such term also means any well, hole, formation, strata or area beneath the surface of the earth in or through which exploration for or production of any such substance is carried on, or any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment which is located in any such well or hole beneath the earth's surface at the time of the accident causing injury or destruction.

DESCRIPTION OF OPERATIONS

Gas Lease Operators - natural gas - all operations
Gasoline Recovery - from casing heads or natural gas
Oil Lease Operators - all operations
Oil or Gas Well Shooting
Oil or Gas Wells - cleaning and swabbing - by contractors
Oil or Gas Wells - drilling or redrilling, installation or recovery or casing

The policies from June 1, 1967 to June 1, 1970 contain the following endorsement:

**EXCLUSION (by endorsement 325)**
**(Underground Resources and Equipment)**

It is agreed that with respect to operations performed by or on behalf of the Named Insured and described in this endorsement:

1. The insurance does not apply to

(a) property damage included within the underground resources and equipment hazard;

(b) the cost of reducing and property included within the underground resources and equipment hazard to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize property damage to other property resulting from acts or omissions causing property damage included within the underground resources and equipment hazard.

2. "Underground resources and equipment hazard" includes property damage to any of the following

(a) oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth;

MURPHY_00017243

(b) any well, hole, formation, strata, or area in or through which exploration for or production of any substance is carried on;

(c) any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole.

DESCRIPTION OF OPERATIONS

Gas Lease Operators - natural gas
Gasoline Recovery - from casing head or natural gas
Oil or Gas Well Shooting
Oil or Gas Wells - cleaning and swabbing - by contractors
Oil or Gas Wells - drilling or redrilling, installation or recovery or casing
Oil Lease Operators

The policies from June 1, 1971 to June 1, 1977; June 1, 1978 to June 1979; June 1, 1980 to June 1, 1985; and June 1, 1986 to June 1, 1988, contain the following endorsement:

**EXCLUSION**
**(Contamination or Pollution-Described Operations)**

It is agreed that, if with respect to operations described in this endorsement, there is a discharge, dispersal, release or escape of oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any watercourse or body of water, the insurance does not apply to bodily injury or property damage arising out of discharge, dispersal, release or escape whether or not sudden or accidental.

DESCRIPTION OF OPERATIONS

Gas Lease Operators - natural gas
Gasoline Recovery - from casing head or natural gas
Non-operating working interests
Oil or Gas Well Shooting
Oil or Gas Wells - acidizing
Oil or Gas Wells - cementing
Oil or Gas Wells - cleaning and swabbing - by contractors
Oil or Gas Wells - drilling or redrilling, installation or recovery or casing
Oil or Gas Wells - instrument logging or survey work in wells
Oil or Gas Wells - perforating of casing
Oil Lease Operators
Oil Pipe Lines - operation, including maintenance
Oil Rig or Derrick Erecting or Dismantling - wood or metal - including construction of foundations or structures or installation of equipment

The policies issued prior to June 1, 1981 do not provide coverage for:

(1) property owned by or occupied by or rented to the Insured,

MURPHY_00017244

(2) property used by the Insured, or

(3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

but parts (2 and (3) of this exclusion does not apply with respect to a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owed by, rented to, or controlled by the Named Insured.

Moreover, the USF&G policies issued on or after June 1, 1981 until June 1, 1988 provide that the insurance does not apply:

(1) to property owned or occupied or by rented to the insured, or . . . to property held by the insured for sale or entrusted to the insured for storage or safekeeping;

(2) except with respect to liability under a written sidetrack agreement . . .

(a) to property while on premises owed by or rented to the insured for the purpose of having operations performed on such property or on behalf of the insured,

(b) to tools or equipment while being used by the insured in performing his operations,

(c) to property in the custody of the insured which is to be installed, erected or used in construction by the insured,

(d) to that particular part of any property, not on premises owed by or rented to the insured,

i. upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or

ii. out of which any property <u>damage</u> arises, or . . . .

iii. the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon or on behalf of the insured;

(3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations", to property damage to work performed by the named insured arising out of such materials, parts or equipment furnished in connection therewith

The policies issued after June 1, 1988 would provide that the insurance does not apply to:

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises; . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

To the extent that all or part of the claims against Murphy fall within the scope of the above exclusions, such claims are excluded from coverage under the policies.

- To the extent that the Policies contain a Saline Substances Contamination Exclusion,  we specifically reserve our right to disclaim coverage for the Lawsuits, in whole or in part, on the basis of this exclusion.

- Coverage will not apply to any voluntary payment, assumed obligation or incurred expense other than for first aid to others at the time of any accident or occurrence.

- Coverage will not apply to any liability arising out of the acts or omissions of any individual or organization other than those individuals or organizations described in the policies as "Named Insured," or "Additional Insured," or "Persons Insured."

- Any payments that might be made by USF&G in this case are subject to the applicable limit of liability.

- Should any applicable limit of liability be exhausted, USF&G's defense obligation in this matter will simultaneously terminate.

In the event that any matters reserved and set forth in this letter are rejected by any court of appropriate jurisdiction (which shall be deemed to include a final order on appeal), we will provide coverage only in accordance with the theory of coverage adopted by such court and will seek and demand reimbursement of payments made by it based upon the reservations set forth in this letter.

Should we assert and prevail on any of the reservations set forth herein, we do not waive our rights, if any, to seek and demand reimbursement for any indemnity or other payments paid either to your

company or on your company's behalf in connection with the captioned suit, and will seek and demand reimbursement of any costs of defense as are reserved above.

As stated above, with respect to policies effective June 1, 1986 forward contain a pollution exclusion that bars all coverage for the Lawsuits.   Such policies contain the following pollution exclusion:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

 (a) At or from premises you own, rent or occupy;

 (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

 (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

 (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations;

  (i) if the pollutants are brought on or to the site or location in connection with such operations; or

  (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

The Montana Lawsuits allege property damage arising from the discharge of pollutants from Murphy's oil and gas operations at or from premises occupied by Murphy for that purpose.  Thus, there is no coverage under any of those USG&G policies based on the above.

As stated above,  USF&G will pay reasonable and necessary rates for attorneys in similar litigation in the same geographic area. It is our understanding that Murphy has retained Scott DuBoff with Foster Garvey P.C. to defend them in the Montana Lawsuits.  Please advise us of Mr. DuBoff's rates for this matter.

We wish to advise you that the allegations asserted against Murphy may seek the imposition of liability, which might exceed the limits of the coverage afforded to Murphy under the subject policies.  Accordingly, Murphy should notify excess carriers whose policies may be applicable to the claims asserted in the action.

Should further information reveal that there is no coverage under the Policies, USF&G reserves the right to withdraw from the defense and to seek reimbursement of all defense fees and costs it previously provided.

As this case develops further, you will be advised of any further legal principles and policy provisions which we deem applicable and which would limit the defense and/or indemnity obligations which USF&G has undertaken or will undertake.

Should you have any questions or concerns please contact me or in house counsel Sue Buckingham at 443-353-1855.


Very truly yours,

Janis E. Schlerf
Senior Account Executive

**EXHIBIT A**

| | | |
|---|---|---|
| USF&G | CGL70234 | 6/1/1954-1955 |
| USF&G | CGL95088 | 6/1/1955-1956 |
| USF&G | CGL136211 | 6/1/1956-1957 |
| USF&G | CGL146649 | 6/1/1957-1958 |
| USF&G | CGL154490 | 6/1/1958-1959 |
| USF&G | CGL215726 | 6/1/1959-1960 |
| USF&G | CGL249750 | 6/1/1960-1961 |
| USF&G | CGL275335 | 6/1/1961-1962 |
| USF&G | CGLRCG291910 | 6/1/1962-1963 |
| USF&G | CGARGA241990 | 6/1/1963-1964 |
| USF&G | CGARGA308529 | 6/1/1964-1965 |
| USF&G | CGARGA363225 | 6/1/1965-1966 |
| USF&G | CGARGA417055 | 6/1/1966-1967 |
| USF&G | 1CC60665 | 6/1/1967-1968 |
| USF&G | 1CC113895 | 6/1/1968-1969 |
| USF&G | 1CC222980* | 6/1/1969-1970 |
| USF&G | 1CC271895 | 6/1/1970-1971 |
| USF&G | 1CC416025 | 6/1/1971-1972 |
| USF&G | 1CC459875 | 6/1/1972-1973 |
| USF&G | 1CC610975 | 6/1/1973-1974 |
| USF&G | 1CC732845* | 6/1/1974-1975 |
| USF&G | 1CC844270 | 6/1/1975-1976 |
| USF&G | 1CC956710 | 6/1/1976-1977 |
| USF&G | 1CCA66670 | 6/1/1977-1978 |
| USF&G | R1CCB68195 | 6/1/1978-1979 |
| USF&G | R1CCC81125 | 6/1/1979-1980 |
| USF&G | R1CCD70720 | 6/1/1980-1981 |
| USF&G | R1CCE23660 | 6/1/1981-1982 |
| USF&G | R1CC012516735* | 6/1/1982-1983 |
| USF&G | R1CC025123000 | 6/1/1983-1984 |
| USF&G | R1CC047900600 | 6/1/1984-1985 |

| USF&G | R1CC063957840 | 6/1/1985-1986 |
|-------|---------------|---------------|
| USF&G | R1CC085138185 | 6/1/1986-1987 |
| USF&G | R1CC090334794 | 6/1/1987-1988 |
| USF&G | 2CG10845419200 | 6/1/1988-1989 |
| USF&G | 2CG11177851300 | 6/1/1989-1990 |
| F&GIU | 2MP12633622100 | 6/1/1990-1991 |

*These policies are exhausted