# **Exhibit M**

In the Matter of the Arbitration Between

**MURPHY EXPLORATION & PRODUCTION CO**.,
a Delaware corporation,

Claimant,

and

**BALLARD PETROLEUM HOLDINGS, LLC**,
a Montana limited liability company,

Respondent.

---

## ORDER ON MURPHY'S MOTION FOR INTERIM DAMAGES

---

This arbitration arises under Section 13 of that certain Purchase and Sale Agreement between Murphy Exploration & Production Company and Munoco Company L.C. as Sellers ("Murphy") and Ballard Petroleum Holdings LLC as Purchaser ("Ballard") of the East Poplar Unit, N.W. Poplar Field & Tule Creek Gathering System, Roosevelt Co., Montana, dated effective January 1, 2002 (the "PSA"). In this proceeding, the Parties assert their respective rights and obligations for indemnification and defense in respect of claims asserted by certain plaintiffs in two lawsuits, *Zimmerman, Inc., et al.* v. *Murphy Exploration & Production Co., et al.,* Case No. 4:20-CV-00068-BMM and *Lockman, et al. v. Pioneer Natural Resources USA, Inc., et al.,* Case No. 4:20-CV-00067-BMM, both filed under state law and diversity jurisdiction in the Federal District Court for the District of Montana (the "Federal Lawsuits"). Murphy also brought third-party claims against Ballard Petroleum Holdings, LLC ("Ballard") (in both *Lockman* and

*Zimmerman*), against Poplar Resources, LLC (in *Zimmerman*), and against Samson Hydrocarbons/Grace Petroleum (in *Zimmerman*). Only Murphy's claims against Ballard are at issue in this arbitration.

Murphy and Ballard (the "Parties"), stipulated in an Order signed by the District Court dated April 14, 2021, to the bifurcation of their respective claims for defense and indemnification of claims which were accordingly ordered to this arbitration.

By Agreement dated April 6, 2022, the Parties appointed three individuals to act as arbitrators. In accordance with Section 13 of the PSA, Ballard appointed Calvin J. Stacey, Murphy appointed Andrew B. Derman and Stacey and Derman appointed William H. Knull, III to act as arbitrators. Stacey and Derman agreed to act as arbitrators and Knull agreed to serve as the third neutral arbitrator. Pursuant to the agreement, Stacey and Derman are to be compensated by the party that appointed them and each of Murphy and Ballard is responsible for one half of Knull's compensation for his performance of duties as the third arbitrator.

Section 13 of the PSA does not designate an institution to administer the arbitration, nor does it adopt a pre-existing set of rules of procedure. As a result, as a first order of business the Parties, with the input and agreement of the arbitrators, negotiated and agreed to an Agreed Procedural Order dated April 6, 2022, to govern the arbitration. Among other things, the Agreed Procedural Order confirmed the appointment of Calvin J. Stacey, appointed by Ballard and Andrew B. Derman, appointed by Murphy to act as arbitrators. Messrs. Stacey and Derman appointed William H. Knull, III to act as chair. It was further agreed that "Each Arbitrator shall be neutral."

The Agreed Procedural Order further provided:

> 2. Governing Law/Jurisdiction. The seat of the arbitration shall be Billings, Montana. The Arbitrators shall apply the substantive law of the State of

Montana. The Arbitrators shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

3. This Agreed Procedural Order shall govern the proceedings in this arbitration, subject to further amendment by agreement of the parties and order of the arbitrators. To the extent that there is any conflict between this Order and the arbitration agreement contained in the January 1, 2002 Purchase and Sale Agreement ("BPH-Murphy PSA"), (the "Arbitration Agreement"), the parties agree that the terms of this Order shall prevail.

On January 5, 2023, the Panel issued its Order on Dispositive Motions. In that Order, the Panel (1) denied Ballard's motion for partial summary judgment based on section 9.4 of the PSA; (2) held that Plaintiffs' claims in *Lockman* and *Zimmerman* fall within Ballard's obligations to defend, indemnify and hold Murphy harmless under the PSA; (3) found that Ballard was in breach of its duty to defend Murphy, subject to Ballard's reservation of rights; (4) found that Plaintiffs' claims in *Lockman* and *Zimmerman* do not trigger Murphy's defense and indemnity obligations under the PSA; and (5) reserved resolution of claims for costs and fees and for the costs of Murphy's defense for the final award.

On May 18, 2023, Ballard negotiated settlement of the *Lockman* litigation directly with the *Lockman* Plaintiffs at a mediation. The *Zimmerman* litigation is ongoing.

**Murphy Motion for Interim Award of Damages**

On June 16, 2023, Murphy filed its Motion for Interim Award of Damages, seeking an interim award of damages for the harm Murphy alleged it has suffered as a result of Ballard's failure to comply with its obligation to defend Murphy in the *Lockman* and *Zimmerman* litigations as agreed in the PSA ("Murphy's Motion"). In brief, Murphy seeks to recover the fees actually paid to its lead counsel, Foster Garvey, its local counsel, Crowley Fleck, and various litigation support entities through April 30, 2023.

In support of its motion, Murphy submitted documentation of the costs and fees it had occurred in its defense of the *Lockman* and *Zimmerman* litigations through April 30, 2023, together with affidavits from its lead counsel in those litigations, John R. Nelson and Rylan Weythman, of the firm of Foster Garvey, as well as Shane A. Bofto, Senior Chemical/Environmental Engineer at HydroSolutions, Inc. a consulting expert in *Lockman*, together with expert reports on legal fees from Mark D. Parker of Parker, Heitz & Cosgrover, PLLC of Billings Montana and Gregory J. DeGulis of McMahon DeGulis LLP, based in Cleveland, Ohio.

In opposition to Murphy's motion for interim damages, Ballard submitted the declaration of its lead counsel in this proceeding, Robert L. Sterup, together with expert reports from Maxon R. Davis of Davis, Hatley, Haffeman & Tighe, P.C. of Great Falls, Montana and Marshall L. Mickelson of Corette Black Carlson & Mickelson, P.C. of Butte Montana, on the subject of legal fees and Jim Rolle of West Central Environmental Consultants, LLC of Missoula, Montana on the subject of HydroSolutions fees in the underlying litigations.

At the hearing on Murphy's Motion, the Parties submitted 51 exhibits, inclusive of demonstratives.

Although the Agreed Procedural Order provides for a reasoned award, the Parties agreed that a traditional reasoned award would not be necessary to resolve the pending Motion, but requested a partial award that addresses the reasoning behind resolution of individual line items of the claim. "Line items" being an accounting term and not further defined by the parties, we interpret this request to refer to the elements of Murphy's claim. Unfortunately, the parties' written and oral submissions had not been organized by line item. To attempt to reconcile the various presentations, comply with the parties' request for a line-item order and ensure that we cover all of the arguments asserted and relief requested, we will first address certain general defenses raised

by Ballard and then the Parties' respective arguments by disputed line item.  **Murphy's Damage**

**Claim**

      Murphy originally summarized the amounts it claims as damages for its fees and costs of

defense in the *Lockman* and *Zimmerman* litigations through April 30, 2023 as follows:

| | |
|---|---|
| Foster Garvey Legal Fees | $2,255,117.00 |
| Foster Garvey Costs | $55,243.62 |
| Crowley Fleck Legal Fees | $375,534.00 |
| Crowley Fleck Costs | $8,582.10 |
| Murphy Direct Costs | $1,413,093.33 |
| **TOTAL:** | $4,107,570.05 |

(Murphy Motion at 5.)

      In the Factual Stipulation dated March 18, 2024, the Parties agreed to the line items listed

below.  (Factual Stipulation, March 18, 2024, at 3.)

| | |
|---|---|
| Chemistry Matters | 179,583.35 |
| Lighthouse | 208,788.07 |
| Fisher Video | 2,822.87 |
| Incidentals | 3,703.32 |
| Espy Case Solutions | 2,151.54 |
| Iron Mountain | 16,293.19 |
| Sound Jury Consulting | 9,143.45 |
| TLD Trinity | 22,506.99 |
| Crowley Fleck Costs | 8,582.10 |
| Foster Garvey Costs | 55,243.62 |
| **Total Stipulated** | $508,818.50 |

(Factual Stipulation at 3.)

      We understand that the item listed in Mr. Weythman's Declaration in support of Murphy's

Motion as "Murphy's Direct Costs" in the amount of $1,413,093.33 to be the total of $968,100.55,

the HydroSolutions fees, plus the stipulated costs ($508,818.50), less the subset of Crowley Fleck

($8,582.10) and Foster Garvey ($55,243.62) Costs, which were included in the stipulated amounts above but had not been stipulated at the time the Motion was filed.

Ballard disputes $36,898.00 of Crowley Fleck fees on the grounds that those fees related to prosecution of third-party claims and are not recoverable, $6,885 as against Ballard and $30,013.00 against unrelated third parties. We address below these issues below. Ballard does not dispute the balance of fees paid to Crowley Fleck of $335,828.50. (Stipulation at 3-4.)

Murphy's damage claim through April 30, 2023 as presented to the Panel for decision was thus as follows:

| | Murphy Damage Claims Thru 4/30/23 | |
|---|---|---|
| | **Disputed** | |
| 1 | Foster Garvey Legal Fees | 2,255,117.00 |
| 2 | Crowley Fleck Legal Fees | 36,898.00 |
| 3 | HydroSolutions | 968,100.55 |
| | **Not Disuted** | |
| 4 | Crowley Fleck | 335,828.50 |
| | **Stipulated** | |
| 5 | Chemistry Matters | 179,583.35 |
| 6 | Lighthouse | 208,788.07 |
| 7 | Fisher Video | 2,822.87 |
| 8 | Incidentals | 3,703.32 |
| 9 | Espy Case Solutions | 2,151.54 |
| 10 | Iron Mountain | 16,293.19 |
| 11 | Sound Jury Consulting | 9,143.45 |
| 12 | TLD Trinity | 22,506.99 |
| 13 | Crowley Fleck Costs | 8,582.10 |
| 14 | Foster Garvey Costs | 55,243.62 |
| | **Total Stipulated** | $508,818.50 |

The disputed "line items" to be resolved are thus limited to the fees paid to Foster Garvey, a portion of those paid to Crowley Fleck and those of HydroSolutions. We will address the various arguments applicable to each separately following the discussion of Ballard's general defenses.

This Order is final with respect to its conclusions on the amount of Murphy's damages for Ballard's breach of its duty to defend Murphy incurred to and through April 30, 2023, except for the amounts paid to HydroSolutions, reserved for further proceedings in this arbitration, and issues of allocation of responsibility as between Ballard and Murphy's insurer, which are reserved for resolution in Federal Court, as described below. All other matters are reserved for the Final Award.

Following a Zoom conference on December 18, 2023, the Panel set an evidentiary hearing on Murphy's Motion which was subsequently rescheduled for April 1 and 2, 2024.

**Insurance Issues Reserved**

Murphy's insurer, USF&G Insurance, has filed a Complaint in Intervention against Ballard in Montana Federal District Court, seeking to recover from Ballard amounts paid by USF&G for defense of Murphy in the *Lockman* and *Zimmerman* litigations. The Parties agree that, based on the evidence presented at the April 1-2 hearing and the briefing previously submitted, the Panel will determine the total amount of Murphy's interim damages through April 30, 2023. Once the Panel decides the total amount of Murphy's interim damages, any issues of allocation as between Ballard and USF&G as well as execution and recovery will proceed in Federal Court.

**The Evidentiary Hearing**

Pursuant to a Procedural Order dated December 19, 2023, the hearing was held over Zoom before the Panel of three arbitrators. At the hearing, the Parties called the following witnesses:

For Movant Murphy:

1.    Mike Jackson, formerly in-house counsel at Murphy;

2.    Shane Bofto, a chemical and environmental engineer who served as a consulting expert in the underlying litigations;

3.    Greg DeGulis and Mark Parker, expert witnesses on the subject of attorneys' fees.

For Respondent Ballard:

4.    Maxon R. Davis and Marshal Mickelson, expert witnesses on attorneys' fees.

**Ballard's Response**

Ballard lists the following issues in response to Murphy's Motion:

1.    the reasonableness of Murphy's claimed defense fees/costs to date;

2.    whether the claimed defense falls within the scope of Ballard's defense duty;

3.    whether Ballard had a duty to indemnify Murphy in *Lockman* where Murphy increased Ballard's exposure as contractual indemnitor;

4.    Murphy and Ballard obligations with respect to ongoing defense of the *Zimmerman* litigation, where Ballard has accepted Murphy's defense under reservation of rights.

(Ballard Response at page 1.) Ballard further contends that "upon resolution of these issues this arbitration will be at an end."  (*Id.*)

Of these issues, the Parties stipulated that issues relating to the ongoing defense in the *Zimmerman* litigation (**Ballard Issue 4**) have been withdrawn.  We address Issues 2, 3 and 1 in that order below.  We note, however, that neither our prior Order on Motions to Dismiss nor this Partial Final Award on Interim Damages resolves all of the issues raised by the pleadings, including both those issues explicitly reserved for the Final Award, those not explicitly decided as yet and, not least, any issues relating to the as yet unresolved *Zimmerman* litigation.  All remaining issues not expressly decided in the Order on Motions to Dismiss, or this Partial Final Award are accordingly reserved to the final award.

**The Scope of Ballard's Indemnity Obligation (Ballard Issue 2)**

Ballard's contention that plaintiffs' claims in *Lockman* and *Zimmerman* are outside Ballard's obligation to indemnify Murphy was fully briefed in the respective motions for declaratory relief and summary judgment and rejected in paragraph 2 of the Panel's Order on

8

Dispositive Motions.  We note in particular that each of the counts alleged in both *Lockman* and

*Zimmerman*, including the count alleging negligence, begin with the allegation that "Plaintiffs

incorporate and reallege all the allegations contained in the foregoing paragraphs as if fully set

forth herein."  (*See* Nelson Declaration, 6/1/2023 ("Nelson Decl."), ¶ 10.)  Ballard further contends

that its obligation to defend applied only to "conditions 'in, on or under' the 'Assets'" (Ballard

Response at 17), but the allegations in both complaints encompassed contamination "in, on and

under" Plaintiffs' respective properties and the litigation remained pending in both cases until the

*Lockman* settlement.  Moreover, the Language of section 9.1 cited by Ballard relating to "third-

party offsite properties" (Ballard Response at 17-18) does not define that term, as Ballard contends;

instead, it excepts from Murphy's obligation to indemnify and defend Ballard

> property loss, contamination, or liability arising from or associated with third-party
> off-site property with respect to which Seller, or seller's contractors or sellers'
> representatives have sold, disposed, transported, or arranged for such transportation
> or disposal, of materials, substances, equipment, or wastes from the properties;

(PSA § 9.1 (capitalization omitted.)  That provision, however, is immediately limited:

> provided that the exception to the duty to indemnify described in the immediately
> preceding clause does not apply to any migration by surface water, groundwater or
> air deposition of materials, substances or wastes to any third-party offsite Property.

(*Id.*) Read together, those clauses exclude from Ballard's indemnification obligation only damages

resulting from the sale, disposal, transportation, etc. of materials to third-parties' properties and

explicitly provide that that exclusion "does not apply to any migration by surface water,

groundwater …".  (*Id.*). Ballard's contention that claims based on such migration are not within

its indemnification obligation is accordingly denied.

**Whether Murphy increased Ballard's exposure as contractual indemnitor (Ballard Issue 3)**

Ballard challenges Murphy's request for $968,100.55 that Murphy paid to HydroSolutions,

a consulting expert with respect to environmental claims.  Ballard contends that Murphy failed to

submit an expert report on time, with the result that HydroSolutions' report and the testimony of its expert, Shane Bofto, were excluded from trial in *Lockman* and that the lack of a qualified expert for the defense increased Ballard's exposure as indemnitor.

Murphy responds that the decision not to submit an expert report was a deliberate tactical move, in that Murphy had no wells or operations on the Lockman property and that by not presenting a testifying expert Murphy was able to avoid collecting data that would otherwise have been useful to plaintiffs' expert. (Nelson Decl. ¶¶ 11-14.) Murphy contends that, far from increasing Ballard's exposure, the decision not to submit a report succeeded in exposing a serious flaw in plaintiffs' expert's work that Murphy was able to exploit persuasively in its Daubert filing. Murphy further contends that Ballard itself exploited this flaw in negotiating a settlement with the *Lockman* plaintiffs for $700,000 as compared to plaintiffs' initial claim in the amount of some $4.54 million. (Nelson Decl. ¶ 15.)

Considering the record as a whole, the Panel concludes that Ballard has failed to carry its burden of proving that Murphy's decision not to file an expert report in *Lockman* unreasonably increased Ballard's exposure as indemnitor, and that defense is accordingly denied. However, it is not disputed that the work of HydroSolutions through April 30, 2023, related to both *Lockman* and *Zimmerman* and that the latter case is continuing. Murphy acknowledges that it did have wells and/or operations on the Zimmermans' property and that its exposure is substantially higher in that proceeding. Because *Zimmerman* is ongoing, it is not possible to determine the value of HydroSolutions' work through April 30, 2023, or the reasonableness of its fees at this time. Murphy's claim to recover the amount it paid to HydroSolutions is accordingly reserved for decision in the Final Award.

**Reasonableness of Murphy's Legal Fees (Ballard Issue 1)**

The bulk of the disagreement between the Parties and their written and evidentiary submissions relate to the reasonableness of the fees paid by Murphy to the law firms Foster Garvey and, to a much lesser extent, Crowley Fleck.

**Applicable legal standard**

Murphy describes the standard and allocation of the burden of proof on the reasonableness of attorneys' fees as follows:

> While "damages must in all cases be reasonable," Mont. Code Ann. § 27-1-302, a party who breaches its duty to defend "does so at its peril," *J & C Moodie Props., LLC v. Deck*, 385 Mont. 382, 389, 384 P.3d 466 (2016); *Tidyman's Mgmt. Servs. Inc. v. Davis*, 376 Mont. 80, 94, 330 P.3d 1139 (2014). "[I]n this extraordinary context, equity shifts the burden of proof on damages due to the dire consequences of breach of the duty to defend, thus rendering the amount of any adverse judgment against the insured, along with defense costs, the presumed measure of damages caused by the breach." *Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 395 Mont. 316, 339-40, 439 P.3d 935 (2019) (Sandefur, J., concurring) (emphasis in original). Thus, "attorney fees paid by [the non-breaching party] are presumed to be reasonable, and the burden shifts to [the breaching party] to establish that fees are unreasonable." 14A Couch on Ins. § 205:76 (emphasis added) (also cited by Ballard); see also *Abbey/Land, LLC v. Glacier Constr. Partners, LLC*, 394 Mont. 135, 153, 433 P.3d 1230 (2019) (breaching party bears the burden of showing damages are unreasonable); *J & C Moodie Props.*, 385 Mont. at 393; *Tidyman's Mgmt. Servs. Inc.*, 376 Mont. at 101-02 (same).

(Murphy Motion at 4-5.)

Ballard agrees that "Under Montana law an award of attorney fees must be reasonable." (Ballard Petroleum Holdings, LLC Response to Request for Entry of Judgment) (Ballard Response) at 2 (citing *Folsom v. City of Livingston*, 381 P.3d 539, 547 (Mont. 2016).

In its April 13, 2023 email order, the Panel, following precedent cited by both parties, directed the adoption of the prevailing-party fee framework set forth in *Plath v. Schonrock,* 314 Mont. 101, 64 P.3d 984 (2003). Plath directs courts to consider the following factors as "guidelines" when "determining what constitutes reasonable attorney fees":

(1) the amount and character of the services rendered;

11

(2) the labor, time, and trouble involved;

(3) the character and importance of the litigation;

(4) the amount of money to be affected;

(5) the professional skill and experience called for;

(6) the attorneys' character and standing in their profession; and

(7) the results secured.

*Plath*, 314 Mont. at 111. *Plath* further mandates that the "reasonableness of attorney fees must be ascertained under the facts of each case," and "[t]hese guidelines are not exclusive." *Id*.

    a. **Prosecution of Claims Against Third Parties**.

*Crowley Fleck Fees.* Ballard contested a portion of the Crowley Fleck legal fees in the amount of $36,898.00, on the grounds that those fees were for Murphy's prosecution of third-party claims and therefore not awardable against Ballard, a contention we reject below. Ballard otherwise did not object to Crowley Fleck fees in the amount listed above. (*Id.*)

Ballard contends that Murphy filed third-party claims against Ballard (in both *Lockman* and *Zimmerman*), and against Poplar Resources, LLC ("Poplar") and Samson Hydrocarbons/Grace Petroleum ("Samson") (in *Zimmerman*). Murphy now seeks to recover from Ballard the amount of $238,408.00 in fees that were incurred in prosecuting these Third-Party claims.

|  | Zimmerman | Lockman | Total |
|---|---|---|---|
| Crowley | $30,013.00 | $6,885.00 | $36,898.00 |
| Foster Garvey |  | $201,510.00 | $201,510.00 |
| Total |  |  | $238,408.00 |

Ballard contends that those fees are not recoverable (Ballard Response at 8-9).

    1. **Claims against Ballard.**

Ballard contends that as a "matter of Montana law, an indemnitee cannot recover fees incurred in prosecuting an indemnity claim. The majority rule, adopted in Montana, "is that a party

is not entitled to its fees and costs incurred in establishing its right to indemnity." *Amazi v. Atlantic Richfield Co*., 249 Mont. 355, 360, 816 P.2d 431 (1991) (Ballard Response at 9). However, the Parties agreed in the Agreed Procedural Order that

> Expenses of arbitration, other than the expenses incurred by each Party in preparing and presenting its position to the arbitration panel, shall be shared equally by the Parties, except each Party shall be solely responsible for the fees and expenses of the Arbitrator selected by it. However, the Arbitrators may, by virtue of an order signed by a majority of the Arbitrators, award costs and expenses to the prevailing Party if the Arbitrators, or a majority of them, on a basis the Arbitrators deem appropriate.

(Order ¶ 6). This issue has not as yet been addressed either as to liability or damages and is reserved for the final award.

### 2. **Claims Against Poplar/Samson**

Claims against potentially liable third parties logically stand in a much different posture than those against Murphy's indemnitor. Success in such third-party claims would reduce any obligation of Ballard under its indemnity. As Mr. Parker explained,

> It would be a breach of the standard of care to defend a claim without looking for people to contribute, or indemnify, or otherwise share in the responsibility. … I don't see anything wrong with it. I see plenty wrong with ignoring contribution or indemnity claims. … And just to be clear, you would consider those third-party contribution claims as part of the defense? Oh, yes.

(Parker, Tr. 109.). Ballard's objection to these fees from both law firms are accordingly overruled.

### Foster Garvey Fees

The bulk of Ballard's objections to Murphy's Motion are directed to the $2,255,117.00 paid by Murphy to its lead counsel, Foster Garvey. We first address the substance of those objections and later assess their quantification.

#### Non-admitted attorney work.

Ballard contends that only four of the fifteen lawyer timekeepers from the Foster Garvey firm applied for or were granted admission to practice *pro hac vice* before the District Court and that Murphy should not be entitled to recover for those not so admitted. Ballard contends that such admission is personal to the admitted lawyers and does not extend to others in their respective firms. Ballard further notes that the orders granting admission *pro hac* specified that the admitted lawyers were required to do their own work. Both sides cite a variety of often conflicting judicial opinions on whether such fees may be recovered in differing circumstances. (*See, e.g.,* Davis, Tr. 185-86 (has not specifically seen a federal judge refuse collection of fees for non-admitted attorneys, but "it may vary from judge to judge, … and one or more of them would say, 'you don't get those fees.'") Ballard seeks to eliminate $275,809.50 out of Murphy's total of $2,255,117.00 on this ground.

The federal courts obviously enjoy broad discretion to regulate the practice of attorneys before them. However, the charge of this Panel is to decide the claims before it for breach of Ballard's contractual duty to defend Murphy. Under Montana law, the measure of damages for breach of contract is

> the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

Mont. Code Ann. 27-1-311 (2021); *see Draggin' Y Cattle Company,* 395 Mont. 316 (2019) (Montana Code Ann. § 27-1-311 governs claim for attorneys' fees as damages under a breach of contract claim.) In this case, Ballard's decision not to contribute to Murphy's defense made it necessary for Murphy to conduct that defense on its own. Murphy's primary team of four Foster Garvey partners, all admitted *pro hac vice*, contributed the largest share of time but apparently needed from time to time to call on non-admitted lawyers, generally for short periods and most

often at lower rates, to assist in its defense. (Weythman Decl. ¶ 6.) Murphy duly paid the bills for that work. That reliance was both reasonable and foreseeable, particularly in connection with such time-consuming tasks as later stage document review and analysis and depositions. We conclude, based on all of the relevant law and evidence, that compensating Murphy for all the detriment that was proximately caused by Ballard's breach includes compensation for fees paid in respect of work done by non-admitted attorneys in support of Murphy's defense.

Ballard's objection to $275,809.50 of Murphy's claim in respect of fees paid to Foster Garvey is therefore overruled.

### b. Credit for *Lockman* Settlement.

Ballard originally sought a credit of $350,000 against its payment of $700,000 in settlement on the *Lockman* litigation on the ground that the litigation risk and therefore the settlement cost had been improperly increased by Murphy's tactical decision not to file an expert report in that litigation. For the reasons cited above, we reject that premise. In addition, however, Ballard withdrew that contention in the pre-hearing stipulation. That objection is accordingly overruled.

### c. Reasonableness of Defense Fees

The Parties agree that the reasonableness of Murphy's fees is governed by the decision of the Montana Supreme Court in *Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003).

#### a. Prevailing Market Rates

Ballard does not object to the rates charged by Crowley Fleck, a Montana firm that served as Murphy's local counsel in both litigations. Foster Garvey's lawyers are based outside Montana.

Ballard's experts opined that the Foster Garvey rates were substantially higher than those charged by similarly qualified lawyers in Montana and proposed individual, much lower, rates for the Foster Garvey lawyers. In contrast, Murphy's experts, concluded that Foster Garvey's rates

were, as Murphy contended, "reasonable, comparable to, and representative of rates charged in the region for attorneys with similar experience and expertise employed at similar firms." (Murphy Reply at 4.)

The selection of reasonable rates for individual lawyers is an inherently subjective task, one that we decline to undertake. As a result, rather than rule on individual rates, we will take Ballard's expert commentary on Foster Garvey's rate structure into account in considering an overall reduction in Murphy's claim as discussed below.

b.  Labor, time and trouble involved

Ballard and its experts contend that Murphy's defense was "vastly over litigated," citing the number of lawyers involved, hours expended, time required for individual tasks compared to the lack of complexity of the legal issues involved and similar complaints. Ballard notes the prevalence of block billing in Foster Garvey's statements, which, Ballard contends, makes it difficult to judge the reasonableness of the time expended on individual tasks.

Murphy points out that fourteen of the twenty-one timekeepers billed less than one hundred hours over four years. The record shows that only four Foster Garvey lawyers spent more than 100 hours on both litigations through April 30, 2023, in aggregate constituting the large bulk of lawyer time billed. The total number of other lawyers and paralegals involved was swelled by a large number who devoted relatively small amounts of time. The large block of time recorded by one paralegal hardly seems unusual, despite the assistance of a litigation services firm in collecting, indexing and storing documents received and produced in discovery, given the need to organize

documents for production, privilege and responsiveness review, deposition preparation, exhibit preparation and all the other tasks inherent in such litigation.[1]

We think it likely that the critique of block billing is somewhat overblown. If a lawyer spends an hour analyzing the importance of a particular precedent to a pending motion, would it add value to require that that hour be separately broken into increments of 6 or ten or fifteen minutes? Would the additional breakdown tell more about the value added to the lawyer's representation by the time spent or enough so to justify the additional time required to document the time and work in such detail? If three lawyers spend 45 minutes debating the optimal strategy to be taken in defending a pending motion, would it be worth the time and effort to require all three to record that time in similar increments?

We agree with Ballard that, among other obstacles to hindsight evaluation of work performed in a context of which we are unfamiliar, the use of block billing makes it difficult to assess the reasonableness of time devoted to individual tasks. We have considered the careful and detailed analyses and opinions submitted by the respective experts. Given the complexity, interrelatedness and importance to the parties of the issues relating to the two lawsuits addressed during this time period, we do not find the overall time involved to have been excessive, nor do we find it reasonable or necessary to attempt to substitute our own estimates of time or weigh individually the alternatives suggested by the respective experts in order to arrive at a reasonable assessment for purposes of Murphy's claim. We will therefore take this issue into account in our quantitative adjustment to that claim as set out below.

        c.   Character and importance of the litigation/amount of money affected.

---

[1] According to Mr. Weythman's declaration, Murphy's litigation support effort required review of 34,927 of Murphy's own documents for privilege and responsiveness as well as review and coding of 56,928 documents produced by other parties. In addition, the Murphy team participated in 35 days of fact and expert depositions involving 460 deposition exhibits. Weythman Decl., ¶ 10.

Ballard concedes that the litigation is important to the Parties.  Eventually *Lockman* proved to have less at stake, as Murphy had never had operations on the Lockman land.  However, Murphy did have operations on the property at issue in *Zimmerman*, with a substantially higher monetary risk as a result.  Because many of the issues were the same in both cases, Murphy had to take its *Zimmerman* exposure into account in its conduct of *Lockman*.  The balancing of risks was reflected in Murphy's strategic decision in *Lockman* not to instruct its expert witness to collect the data that would be necessary to support an expert opinion for the defense but would also afford plaintiffs' expert with data on which to rely that he otherwise would not, and in the event did not, have.  On balance, while there were no doubt some well-developed legal issues, as Ballard and its experts contend, the litigations had substantial stakes and complexity calling for careful and practiced judgment on the part of Murphy's counsel.

       d.   The professional skill and experience called for.

Ballard and its experts trivialize the necessary skill and experience required for Murphy's defense as if the entire issue could be explained by the novelty, or asserted lack thereof, of statutory and case precedent.  The insufficiency of that analysis is manifest in the assertion by expert Maxon Davis that "The idea that a client in an environmental contamination case could best be represented by not being in a position to call a liability expert defies credulity." (Ballard Response at 6, quoting Davis Decl., Ex. 32, ¶ 12).  The experts further acknowledge the skill and reputation of the three law firms representing plaintiffs in the two lawsuits.  "[Y]ou're not going to face a more formidable pool of plaintiffs' attorneys in this state."  (Parker Tr. at 103.)  Since it appears that the strategic decision taken by Murphy's counsel to avoid collecting data usable by and otherwise unavailable to plaintiffs' expert was instrumental in its success against that expert in court as well as in Ballard's successful negotiation of a settlement well below the original claim, we find Ballard's

reliance on its claim of the clarity of precedent to have little persuasive force against the judgment and performance of Murphy's counsel and the caliber of its opposition.

e.   Attorneys' character and standing in their profession.

Ballard does not dispute the character and standing of Murphy counsel.

f.   Results secured by the services of the attorneys.

Murphy asserts that, relying principally on Murphy's arguments in its motion practice against plaintiffs in *Lockman*, Ballard was able to settle the case for approximately 15% of Lockman's original $4.54 million claim. (Nelson Decl. ¶ 6.)

As to the amount of Foster Garvey fees, Ballard adopts the conclusions of its two fee experts: "The Foster Garvey fees should be in the range of $505,462.05 (Mickelson) to $892,600.49 (Davis)." (Ballard Response at 20.).  Those amounts would represent cuts from 80% to 60%, respectively.  We find those recommendations to be excessively harsh and unjustified.

Mr. Mickelson's calculation, for example, suffers from serious arithmetic as well as substantive errors.  He presents a table showing hours and his proposed rates for four Foster Garvey partners admitted *pro hac vice* along with three paralegals, then provides an erroneous total for the amended fees he proposes to allow:

| Time Keeper | Role | Hours | Montana | |
|---|---|---|---|---|
| Nelson | Admitted | 2041.1 | $395 | $806,235 |
| DuBoff | Admitted | 633.5 | $395 | $250,233 |
| West | Admitted | 425.8 | $395 | $168,191 |
| Weythman | Admitted | 12.3 | $395 | $4,858.50 |
| Grgurevic | Paralegal | 1 | $150 | $150 |
| Robertson | Paralegal | 9.8 | $150 | $1,470 |
| Ziegenbein | Paralegal | 947.3 | $150 | $142,095 |

(Mickelson Report, Ex. 31, at 10.). Mr. Mickelson's table erroneously shows the resulting total as $1,123,249. (*Id.*). Plugging the same numbers into Excel, however, shows that Mr. Mickelson's addition is incorrect: the total for the entries he shows should be $1,373,231.50.

| Time Keeper | Role | Hours | Montana | |
|---|---|---|---|---|
| Nelson | Admitted | 2041.1 | $395 | $806,235 |
| DuBoff | Admitted | 633.5 | $395 | $250,233 |
| West | Admitted | 425.8 | $395 | $168,191 |
| Weythman | Admitted | 12.3 | $395 | $4,858.50 |
| Grgurevic | Paralegal | 1 | $150 | $150 |
| Robertson | Paralegal | 9.8 | $150 | $1,470 |
| Ziegenbein | Paralegal | 947.3 | $150 | $142,095 |
| **Total** | | | | **$1,373,231.50** |

Mr. Mickelson therefore understates the total fee for admitted attorneys based on his proposed rates by $249,982.27 ($1,373,231.50 - $1,123,249.23 = $249,982.27.)

Mr. Mickelson then incorporates these same numbers into a table that adds billers who were not admitted *pro hac vice* in the federal case with his recommended hourly rates inserted, obtaining a total of $1,358,344.33. (Ex. 31 at 11.). This sum again understates his own total by the same $249,982.27. Excel again confirms that the actual total should be $1,608,326.60.

Finally, Mr. Mickelson further adjusts his understated calculation, which already incorporates his substantially reduced recommended hourly rates, by concluding that a "fair reduction, would be a 45% reduction for Foster Garvey's bill, resulting in a total for attorney time billed of $505,462.05." (Ex. 31 at 11.) Mr. Mickelson does not explain this calculation, but $505,462.05 constitutes 45% of $1,123,249 – his erroneously understated total of fees using his proposed rates. Without adjusting for the relatively minor components of the fees challenged by Ballard, the resulting "total for attorney time billed" Mr. Mickelson proposes amounts to 22% of the $2,255,117.00 that Murphy actually paid Foster Garvey, a reduction of nearly 80%.

The Panel accepts that Mr. Mickelson has the experience and expertise to qualify as an expert on the qualitative aspect of what constitutes recoverable attorneys' fees. We acknowledge his critique of Foster Garvey's "block billing," which does make it difficult to assess the value of services lumped together in lengthy statements of work done, although it may be questionable whether it would be more useful to require every timekeeper to report every few minutes of an eight hour day while working on a case lasting years or to similarly record every few minutes of a day spent preparing for a hearing involving some 20 motions. We accept that local Montana firms charge rates somewhat lower than those charged by Foster Garvey and paid by Murphy but note as well the evidence of the presence of regional firms whom clients retain to appear in Montana at even higher rates. We note that, as the experts acknowledged, Murphy, a sophisticated purchaser of legal services, in fact paid Foster Garvey's invoices with no assurance of recovery from its insurer or indemnitor but note as well that the total fees charged by Foster Garvey and paid by Murphy are large relative to the amounts in controversy even in the two lawsuits taken together.

On the whole, therefore, we find that Mr. Mickelson's recommendation to cut the fees paid by Murphy to Foster Garvey by nearly 80% to be excessively harsh. Instead, we conclude that Murphy's claim with respect to the fees it paid to Foster Garvey should be reduced by 15%, for a total assessment for that aspect of its damage claim as set out below.

Mr. Davis avoided some of Mr. Mickelson's arithmetic errors but still reached a recommended total that the Panel also finds to be excessively harsh.

Mr. Davis adopted Mr. Mickelson's calculation of recoverable fees for attorneys admitted *pro hac* vice using Mickelson's proposed substitute rates. However, Mr. Davis reached the correct total of the adjusted fees for admitted attorneys that Mickelson miscalculated ($1,373,231.50 [correct] vs. Mickelson's $1,123,249.23 [incorrect]). Mr. Davis then reduced his total by a factor

of 35% to account for "inefficiencies." (Davis Declaration at 10.). The result was his recommendation of a total fee of $892,600.49, or 40% of the amount Murphy actually paid Foster Garvey. (*Id.*)

Like Mr. Mickelson's reduction of 80%, we find Mr. Davis's 60% excessively harsh and confirm our finding reducing the amounts Murphy paid to Foster Garvey by 15%.

**Murphy's Damages**

Applying the rulings and for the reasons set forth above we find that Murphy is entitled to recover damages for Ballard's breach of its duty to defend, indemnify and hold Murphy harmless under the PSA in connection with the *Lockman* and *Zimmerman* lawsuits through April 30, 2023, in the amounts set forth below:

|  | Claimed | Stip | Deferred |  | Less 15% | Awarded |
|---|---|---|---|---|---|---|
| Foster Garvey Legal Fees |  |  |  |  | 1,916,849.45 | $1,916,849.45 |
| Crowley Fleck Legal Fees |  |  |  |  |  |  |
|    Disputed |  |  |  |  |  |  |
|    Deferred (Claims v Ballard) |  |  | $30,013.00 |  |  |  |
|    Claim granted (3P Claims) |  |  |  |  |  | $6,885.00 |
|    Not Disputed |  | X |  |  |  | $335,828.50 |
| Stipulated Costs |  |  | $508,818.50 |  |  | $508,818.50 |
|    Crowley Fleck Costs |  | X |  |  |  |  |
|    Foster Garvey Costs |  | X |  |  |  |  |
|    Balance of Stip Costs |  |  |  |  |  |  |
| Murphy Direct Costs |  |  |  |  |  |  |
|  |  | X |  |  |  |  |
|    HydroSolutions |  |  | $968,100.55 |  |  |  |
| **TOTAL:** |  |  |  |  |  | $2,768,381.45 |

**The Decision of the Tribual on Murphy's Motion for Interim Damages**

For the reasons set forth above, the Tribunal awards Murphy the sum of $2,768,381.45 in in respect of its motion for interim damages for Ballard's breach of its duty to indemnify through

and including April 30, 2024, all relief requested in that motion and not granted herein is denied,

subject to the reservations noted in the text.

Dated this 22th day of January 2025

William Knull

Dated this 22th day of January 2025

Cal Stacey

Dated this 2th day of January 2025

Andrew B. Derman

23