# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| MURPHY EXPLORATION & PRODUCTION CO., a Delaware corp., MURPHY OIL USA, INC., a Delaware Corp., MURPHY OIL CORPORATION, a Delaware Corp. | CV-20-67-GF-BMM |
| Third Party Plaintiffs, | **ORDER ON SUMMARY JUDGMENT** |
| v. | |
| BALLARD PETROLEUM HOLDINGS, LLC, a Montana Limited Liability Company, | |
| Third-Party Defendants | |
| UNITED STATES FIDELITY AND GUARANTY COMPANY, a Connecticut Corporation, | |
| Intervenor Plaintiff / Counterclaim Defendant, | |
| v. | |
| BALLARD PETROLEUM HOLDINGS, LLC, | |
| Intervenor Defendant / Counterclaim Plaintiff / Third-Party Plaintiff / Counterclaim Defendant, | |
| v. | |
| VIGILANT INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, | |

1

Third-Party Defendant /Counterclaim
Plaintiffs.

# INTRODUCTION

This matter arises from a dispute between an insurer, indemnitor, and an insured. The parties move for summary judgment to determine who must pay the defense costs of Murphy Exploration and Production Co. ("Murphy"). (Docs. 353, 354, and 358.)

# BACKGROUND

Murphy and Ballard Petroleum Holdings, LLC ("Ballard") executed a 2002 Purchase and Sale Agreement ("2002 PSA") under which Ballard acquired Murphy's interests in the East Poplar Oilfield in Montana. (Doc. 372 at ¶ 1.) Ballard agreed to indemnify Murphy in the 2002 PSA. The Environmental Protection Agency ("EPA") identified environmental contamination caused by Murphy's oil and gas operations in the East Poplar Oil Field ("EPOF") around 1999-2000. Property owners sued Murphy in 2020 for alleged pollution of the drill sites. (*See also Zimmerman* Case No. 4:20-CV-68-BMM).

Murphy tendered the lawsuits to USFG. (Doc. 362 at ¶ 8.) USFG had issued general liability insurance policies to Murphy from 1951-1991. (Doc. 362 at ¶ 1.) The policy included a cooperation clause and subrogation provision. (*Id*. at ¶¶ 4–5.) USFG initially denied coverage of the lawsuits in 2007 but later agreed in September

2

2021 to defend Murphy under reservation of rights from October 2020 forward. (Doc. 372 at ¶ 4; Doc. 362 at ¶ 9.)

Murphy sought indemnification from Ballard for restoration damages to be awarded in the action by the property owners. (Doc. 362 at ¶ 10.) The Court ordered arbitration on Murphy's claims in April 2021. (*Id*. at ¶ 11.) The arbitration proceeding commenced in April 2022. The arbitration panel issued an order on January 4, 2023. The arbitration panel found that Ballard owed a duty to defend and indemnify Murphy under the 2002 PSA and that Ballard had breached its duty. (Doc. 362 at ¶ 12; Doc. 372 at ¶ 3.)

USFG later notified Murphy that its policies no longer would cover Murphy's liability costs due to the arbitration ruling. (Doc. 362 at ¶ 15.) USFG further directed Murphy to submit remaining defense costs to Ballard. (*Id*. at ¶ 16.) USFG intervened in the Ballard suit to request reimbursement for defense costs paid to Murphy under its policies. (*Id*. at ¶ 17.)

Murphy asserts that it submitted close to $7.1 million in defense and arbitration costs to USFG. (*Id*. at ¶ 21.) USFG disputes the amount and claims that Murphy submitted approximately $6.6 million in defense and arbitration costs. (*Id*. at ¶ 23.) USFG has paid $3,919,278.29 of these costs. (*Id*. at ¶ 22.) The arbitration panel determined that Ballard owed Murphy $2,768,381.45 for defense costs through April 30, 2023. (*Id*. at ¶ 26.) The Court modified the award to interim

3

damages and reduced the amount to $1,397,743.74 to avoid double recovery. (Doc. 404.)

## LEGAL STANDARD

Summary judgment proves appropriate when the movant demonstrates "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## ANALYSIS

USFG moves for summary judgment against both Ballard and Murphy. (Doc. 359 and Doc. 360.) Ballard and Murphy oppose USFG's motion for summary judgment. (Doc. 387 and Doc. 385.) Murphy also moves for partial summary judgment against USFG. (Doc. 363.) USFG opposes Murphy's motion for partial summary judgment. (Doc. 382.)

### I. USFG's Claims against Ballard

USFG seeks summary judgment on its claim that Ballard owes the primary obligation to defend Murphy and that it is entitled to equitable relief. (Doc. 359 at 6). Ballard denies that its obligations are primary over USFG. (Doc. 387 at 12.)

Ballard and Murphy equally contend that USFG is not entitled to equitable relief. (Doc. 387 at 23; Doc. 363 at 9.)

### A. Whether Ballard's contractual duty to indemnify Murphy against the *Lockman and Zimmerman* suits proves primary over USFG.

USFG argues that an indemnification agreement "shift[s] the entire loss to the party who agreed to indemnify and defend the other party *even when the indemnitee has insurance that may also cover the loss*." (Doc. 359 at 15) (emphasis in the original). Ballard, in opposition, argues that USFG's obligations, as the insurer, remain primary over Ballard's contractual obligations to Murphy and that USFG should assert its claims against Ballard's insurers. (Doc. 387 at 11.) Murphy also argues in opposition that Ballard and USFG each owe independent contractual duties to defend Murphy. (Doc. 385 at 7.)

USFG points to the Eighth Circuit's decision in *Wal-Mart Stores, Inc. v. RLI Ins. Co.* to support its position. 292 F.3d 583 (8th Cir. 2002). The Court agrees that the reasoning and holding in *Wal-Mart Stores, Inc.* help resolve the dispute here. The Court disagrees, however, that *Wal-Mart Stores, Inc.* stands for the proposition of shifting the burden for the loss entirely onto an indemnitor in *every* dispute between an insurer and an indemnitor.

The Eighth Circuit instead created a "factual relationship" inquiry that determined the relevancy of an indemnity agreement in holding that the excess insurer owed a duty to indemnify and defend Wal-Mart. *Id*. at 589–590. This

5

"factual relationship" inquiry considers the following factors: "the intentions and relationships of the parties" in creating the indemnity agreement, the rights created from the indemnity agreement for the insured and the insurer, the relief provided to the insured, and whether the relief "would cause circuitous litigation." *Id*. at 590.

The Eighth Circuit concluded in *Walmart Stores Inc.* that the excess insurer remained liable for the settlement based on these factors. *Id*. at 587–589. The defendant contractually agreed to indemnify and defend Wal-Mart. *Id*. at 587–88. The agreement "created rights in Wal-Mart and [its insurer] to recover money paid in the settlement." *Id*. at 589. The defendant had included Walmart as a "covered insured" under its insurance policies. *Id*. at 585. The defendant's excess insurer disputed whether it owed a contribution to Walmart's settlement costs. *Id*. The Eighth Circuit determined that resolving the dispute in favor of the excess insurer "would violate a basic principle of insurance: that an insured cannot be liable to an insurer for a covered loss." *Id*. at 593. This outcome could "lead to circular litigation that would ultimately place the parties back in the positions they were in at the filing of [the] suit." *Id*.

Applying the same factual relationship inquiry here, the Court determines that the facts fail to demonstrate that the indemnity agreement requires Ballard to bear the primary duty to defend and indemnify Murphy. Murphy purchased insurance from USFG long before it sought indemnification from Ballard in the

6

2002 PSA agreement. The insurance policy covers general liabilities. (Doc. 362 at ¶ 1.) The *Zimmerman* and *Lockman* suits allege contamination throughout the policy period that USFG insured Murphy. (*See* Doc. 133, No. 4:20-CV-68-BMM.) USFG also collected premiums from Murphy to cover the full costs of any liability incurred by Murphy throughout the policy period. USFG collected these premiums and assumed these liabilities for many years before Murphy entered the 2002 PSA with Ballard.

The terms of the indemnity agreement cover only third-party claims "attributable to the ownership or operation of the [East Poplar Oilfield]." (*See* Doc. 44-1 at 2–3.) The plain language of these terms indicates that Ballard owes some duty to defend and indemnify Murphy against claims of alleged pollution arising from Murphy's oil and gas operations. The Court remains unconvinced, however, that the terms of the indemnity agreement further require Ballard to defend and indemnify Murphy against claims involving Ballard. The costs attributable to the defense of Murphy in the arbitration panel at least fall squarely on Murphy's covered insurance policies with USFG.

The terms of the indemnity agreement likely fail to create rights for any insurer of Murphy, including USFG. The terms of the 2002 PSA list Murphy and "its successors and assigns, its officers, directors, agents or employees and . . . [subsidiaries, affiliates, or parent companies." (Doc. 44-1 at 2.) If Murphy had

7

intended for the indemnification agreement to create rights for its insurer, USFG, the agreement likely would have expressly created such rights for USFG.

The same rationale would apply even if the Court were to interpret the 2002 PSA as having created some rights in USFG for recovery. Ballard's own insurance policies did not cover Murphy as an insured. The terms of the 2002 PSA also fail to mention that the indemnity agreement supersedes any prior duty owed by an insurer or any party, to defend and indemnify Murphy. (*See id*.) The intentions and relationships of the parties in this case differ from the circumstances in *Wal-Mart Stores, Inc*.

The Court further notes that the dispute does not involve the same concerns confronted by the Eighth Circuit. Unlike *Wal-Mart Stores, Inc.*, where the excess insurer sought payment from its insured, USFG seeks payment from Ballard. "The basic principle of insurance" that protects an insured from liability against its insurer remains protected. *Id*. at 593. No issue exists regarding circuitous litigation either. The Court rejects Ballard's assertions that the case law demonstrates that USFG should pursue recovery from Ballard's insurers. (Doc. 387 at 16 and 23.) To pursue Ballard's insurers would prove fruitless because the Court has determined that Ballard's insurers owe no duty to indemnify Ballard for Murphy's defense. (*See* Doc. 412.)

8

Murphy may choose to recover incurred defense costs from USFG or Ballard. The Court will not shift the entire obligation to Ballard when Murphy has chosen to pursue the defense costs against USFG. The Court will deny USFG's motion for summary judgment that would have required Ballard to bear primary responsibility for Murphy's defense costs.

## B. Whether USFG is entitled to equitable relief.

USFG seeks equitable relief that would require Ballard to pay for Murphy's future defense costs and reimburse USFG for costs previously paid to Murphy with interest. (Doc. 359 at 25.) Ballard opposes the motion. (Doc. 387 at 24.) Both Ballard and Murphy argue that the made whole doctrine prohibits USFG from seeking subrogation until Murphy has been reimbursed for all losses and costs. (Doc. 387 at 24; Doc. 363 at 9.) USFG asserts that the remedy of equitable contribution does not apply in this case, therefore, the Court declines to review it. (Doc. 359 at 22–23.)

Montana law recognizes the doctrine of subrogation. *See Van Order v. U.S. Auto. Ass'n*, 318 P.3d 1042, 1045 (Mont. 2014). Subrogation substitutes an insurer for the insured. *Id*. The insurer becomes entitled to the same "rights, remedies, or securities that would otherwise belong to the [insured.]" *Id.* (quoting Black's Law Dictionary 1563–64 (Bryan A. Garner ed., 9th ed., West 2009)). These rights include "the insured's rights of recovery against a third party who is responsible

9

for the loss." *Id*. Subrogation ensures equitable results. The doctrine prevents unjust enrichment in cases where an insured recovers from "both the insurer and the wrongdoer" or where a "third party would go free despite [a] legal obligation in connection with [the] loss." *Id*. (quoting *Skauge v. Mt. States Tel. & Tel. Co.*, 565 P.2d 628, 630 (Mont. 1977)).

To exercise the right to subrogation, the insurer first must "fully compensate" the insured for its damages and attorney's fees based on the made whole doctrine. *Id*. at 1045. The made whole doctrine satisfies the "equitable principles underlying subrogation because [insureds] who are not yet compensated for their loss are not unjustly enriched by recovering from both parties, and third-party tortfeasors are not relieved of their legal obligation for the loss." *Id*. The made whole doctrine follows "two guiding concerns based upon prevailing equitable principles:" (1) an insured "must be made whole for its losses;" and (2) "if either the insured or the insurer must to some extent go unpaid, equity prescribes that the loss should be borne by the insurer." *DeTienne Assocs. Ltd. Partnership v. Farmers Union Mut. Ins. Co.*, 879 P.2d 704, 709 (Mont. 1994).

The Court determines that USFG is not entitled to summary judgment under a theory of subrogation. USFG has yet to make Murphy whole. The undisputed facts demonstrate that USFG has failed to reimburse Murphy fully for its losses and attorney's fees connected to defense costs in the *Lockman* and *Zimmerman*

lawsuits. Both USFG and Murphy agree that USFG has paid Murphy $3,919,278.29 of the defense costs. (Doc. 362 at ¶ 22.) The parties dispute only the remaining amount of defense costs. (*Id.* at ¶¶ 21, 23.) Even taking the lower amount of $6.6 million in defense costs, USFG has failed to make Murphy whole. The $3.9 million that USFG has paid to Murphy for defense does not fully compensate Murphy for the $6.6 million costs of its defense.

No equitable concerns prohibiting double recovery exist. Ballard has not reimbursed Murphy for its defense costs as of the briefing of this case. (Doc. 363 at 13.) The Court may not substitute USFG for the rights of Murphy until USFG makes Murphy whole at least for Murphy's defense costs against Ballard for the arbitration proceeding. The Court may be required to conduct further proceedings on USFG's claim for equitable relief if USFG were to make Murphy whole. The Court would be required at that time to resolve USFG's right to subrogation against Ballard. The Court notes, however, that USFG, as the insurer, bears the primary responsibility to cover Murphy's defense costs. *DeTienne Assocs.*, 879 P.2d at 709.

## II. USFG's claims against Murphy

USFG seeks summary judgment against Murphy based upon Murphy's failure to cooperate with USFG and claims that the attorney fees and costs for Murphy's defense prove unreasonable. (Doc. 360 at 2, 10.) Murphy contends that USFG

11

breached its duty to defend Murphy when it failed to reimburse Murphy for reasonable defense costs. (Doc. 385 at 15.) The Court discusses each issue in turn.

**A. Whether Murphy breached its duty to cooperate.**

USFG argues that Murphy breached its duty to cooperate for three main reasons. First, USFG claims that Murphy failed to disclose Ballard's contractual duty to defend and indemnify Murphy and Ballard's offers to defend Murphy in the *Lockman* and *Zimmerman* lawsuits. (Doc. 360 at 2, 25.) Second, USFG alleges that it suffered prejudice when Murphy failed to provide it "the opportunity to reduce its defense obligations." (*Id*. at 24.) Third, USFG argues that it suffered additional prejudice when Murphy refused to submit its defense costs to Ballard. (*Id*. at 25.) Murphy disagrees. (Doc. 385 at 11.)

The Court applies Montana law to the claims as Murphy concedes that Montana and Arkansas require the same analysis. (Doc. 385 at 12.) "The duty to cooperate typically arises from the inclusion of a cooperation clause in an insurance policy." *Streeter v. USAA Gen. Indem. Co.*, 2023 WL 8449203, at *1 (9th Cir. Dec. 6, 2023). The Court finds that Murphy owed a duty to cooperate with USFG based on the inclusion of a cooperation clause in the insurance policy. The insurance policy between USFG and Murphy stated the following:

> "[Murphy] shall cooperate with [USFG] and, upon [USFG's] request assist . . . in enforcing any right of contribution or indemnity against any person or organization who may be liable to [Murphy] because of

12

> bodily injury or property damage with respect to which the insurance is afforded under this policy."

(Doc. 285 at 12.) The Court next addresses whether Murphy breached its duty to cooperate.

An insurer must establish the following elements to succeed under a theory of breach of duty to cooperate: "(1) the insured failed to cooperate in a material and substantial respect, (2) with an insurer's reasonable and material request, (3) thereby causing actual prejudice to the insurer's ability to evaluate and investigate a claim." *Id*. at *2. USFG cites to *Baadsgaard v. Safeco Insurance Company* to support its claims of breach. (Doc. 360 at 23.)

In *Baadsgaard v. Safeco Insurance Company of Illinois*, the material and substantial breach involved an insured's failure to notify of a settlement where the insured assigned claims against its insurer to a plaintiff. 2020 WL 7353516, at *1 (D. Mont. Dec. 15, 2020). *Baadsgaard* determined that the insured's "failure to notify . . . necessarily prejudiced" the insurer. *Id*. at *3. The failure to notify excused the insurer from its duty to defend and indemnify the insured. *Id*. at *3–4. The insured had "deprived [the insurer] of the opportunity to locate witnesses, appoint counsel, engage in discovery, negotiate a settlement, and develop a trial strategy." *Id*.

The undisputed facts demonstrate no genuine issue of material fact. It remains questionable whether Murphy failed to cooperate in a material and

substantial manner to prejudice USFG. Unlike the insured party in *Baadsgaard*, who failed to notify the insurer that he assigned his rights, Murphy never assigned its rights to Ballard against USFG. Murphy attempted to notify USFG of the Ballard arbitration, Ballard's offers to pay defense costs, sent a copy of the Ballard arbitration order, maintained correspondence with USFG, and sought consent before settling some claims. (Doc. 385 at 18.)

The parties dispute whether Murphy timely informed USFG about the Ballard arbitration on September 15, 2022. (Doc. 360 at 29; Doc. 385 at 15.) USFG does not object to Murphy's assertion that Murphy provided a status report on June 8, 2022. (*See* Doc. 360 at 29–31; Doc. 362 at ¶ 10–15.) The status report detailed Murphy's claims against Ballard. (*Id*.) These facts distinguish the case from *Baadsgaard*. USFG may not evade its duty to defend and indemnify Murphy "based solely on a technical or *de minimis* violation" of alleged prejudice. *See Baadsgaard,* 2020 WL 7353516 at *2 (italics in original). USFG has failed to establish the requisite elements of a breach of duty to cooperate.

**B. Whether USFG breached its duty to defend Murphy.**

Murphy argues that USFG's refusal to reimburse it for reasonable defense costs constitutes a breach of USFG's duty to defend Murphy. (Doc. 385 at 19.) USFG argues that it did not breach its duty to defend Murphy because an insurer may contest the reasonableness of an insured's defense costs. (Doc. 360 at 32).

14

Courts assess the reasonableness of attorney fees under a facts-based inquiry. *Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003).

A court considers the following factors to determine the reasonableness of attorney fees:

> (1) the amount and character of the services renders; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

*Id*. (citations omitted). The *Plath* factors are non-exhaustive. *Ferdig Oil Co., Inc. v. ROC Gathering, LLP*, 432 P.3d 118, 125 (Mont. 2018).

The *Plath* factors indicate that Murphy's attorney's fees present reasonable rates. Murphy engaged in complex litigation involving environmental contamination of the East Poplar Oilfield. (Doc. 385 at 22.) The plaintiffs in the *Zimmerman* and *Lockman* lawsuits initially alleged over $100 million in restoration damages. (*See* Zimmerman Case No. 4:20-CV-68-BMM.) The proceedings have lasted several years. The teams assembled from Foster Garvey and Crowley Fleck are well-versed and qualified in this type of litigation. Murphy conducted due diligence in obtaining a discount of the standard hourly rate from its lead counsel Foster Garvey. (*Id*. at 22–23.) The attorneys achieved positive results for Murphy in the Ballard arbitration.

Given these facts, the *Plath* factors demonstrate the reasonableness of Murphy's attorney's fees. *Plath*, 64 P.3d at 991.

The Court also finds that USFG did not breach its duty to defend Murphy by contesting the reasonableness of the attorney's fees. USFG has attempted to pay some of the defense costs to Murphy. USFG may consult with Murphy on the costs of defense, including the reasonable rates of attorney's fees. *See In re the Rules of Pro'l Conduct*, 2 P.3d 806, 814 (Mont. 2000). Moving forward, USFG must pay the reasonable defense costs of Murphy.

## CONCLUSION

The Court denies USFG's motion for summary judgment against Ballard. (Doc. 353.) USFG has the primary obligation to Murphy for defense costs. The Court also grants Murphy's motion for partial summary judgment. (Doc. 358.) Ballard does not owe a primary obligation to Murphy for defense costs. USFG may not assert a claim for subrogation against Ballard until USFG fully reimburses Murphy for its submitted defense costs. The Court declines to review Ballard's claims for equitable contribution as USFG concedes it does not apply.

The Court also denies, in part, and grants, in part, USFG's motion for summary judgment against Murphy. (Doc. 354.). Murphy did not breach its duty to

cooperate with USFG, and USFG did not breach its duty to defend Murphy. Murphy submitted reasonable attorney's fees to USFG.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that

1. USFG's motion for Summary Judgment against Ballard Petroleum (Doc. 353) is **DENIED**.

    A. USFG's contractual obligation to defend Murphy against the *Lockman* and *Zimmerman* suits remains primary.

    B. Both Ballard and USFG have independent contractual duties to fund Murphy's defense against the *Lockman* and *Zimmerman* suits.

2. USFG's motion for Summary Judgment against Murphy Oil (Doc. 354) is **DENIED**, in part, and **GRANTED**, in part.

    A. USFG did not fail to defend Murphy.

    B. Murphy did not fail to cooperate with USFG.

    C. Murphy's defense costs prove reasonable.

    D. USFG continues to owe Murphy further obligations and duties.

    E. If USFG seeks subrogation against Ballard after making Murphy whole, Murphy shall cooperate with USFG's reasonable subrogation efforts.

3. Murphy's motion for Partial Summary Judgment Regarding Made Whole

Doctrine (Doc. 358) is **GRANTED**.

A. USFG must make Murphy whole before pursuing subrogation against Ballard.

B. USFG may pursue subrogation against Ballard after the *Zimmerman* and *Lockman* suits and Ballard arbitration conclude and USFG has completely reimbursed Murphy for all losses and costs incurred in connection with the *Zimmerman* and *Lockman* suits and Ballard arbitration.

C. USFG has disclaimed any rights to recover previously paid costs against Murphy.

**DATED** this 10th day of October, 2025.

_____
Brian Morris, Chief District Judge
United States District Court