IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MURPHY EXPLORATION & PRODUCTION CO., a Delaware corp., MURPHY OIL USA, INC., a Delaware Corp., MURPHY OIL CORPORATION, a Delaware Corp.<br><br>Third Party Plaintiffs,<br><br>    v.<br>BALLARD PETROLEUM HOLDINGS, LLC, a Montana Limited Liability Company,<br><br>Third-Party Defendants<br><br>UNITED STATES FIDELITY AND GUARANTY COMPANY, a Connecticut Corporation,<br><br>Intervenor Plaintiff / Counterclaim Defendant,<br><br>    v.<br>BALLARD PETROLEUM HOLDINGS, LLC,<br><br>Intervention Defendant / Counterclaim Plaintiff / Third-Party Plaintiff / Counterclaim Defendant,<br><br>    v.<br>VIGILANT INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, | CV-20-67-GF-BMM<br><br>AMENDED ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

1

Third-Party Defendant /Counterclaim Plaintiffs.

# INTRODUCTION

Ballard Petroleum Holdings, LLC ("Ballard") moves for summary judgment against Federal Insurance Company ("Federal") and Vigilant Insurance Company ("Vigilant"). (Doc. 349, 351.) Federal and Vigilant filed a combined response. Federal and Vigilant oppose the motion. (Doc. 390.) Federal and Vigilant move for summary judgment against Ballard. (Doc. 364.) Ballard opposes the motion. (Docs. 376 and 377.)

# BACKGROUND

Ballard and Murphy Exploration and Production Co. ("Murphy") executed a 2002 Purchase and Sale Agreement ("2002 PSA") under which Ballard acquired Murphy's interests in the East Poplar Oil Field ("EPOF") in Montana. The Environmental Protection Agency ("EPA") identified environmental contamination caused by Murphy's oil and gas operations in the EPOF around 1999-2000. Property owners sued Murphy in 2020 for alleged pollution of the drill sites. (*See Zimmerman* Case No. 4:20-cv-68-BMM and *Lockman* Case No. 4:20-cv-00067-JTJ.)

An arbitration panel determined on January 4, 2023, that the 2002 PSA obligated Ballard to defend Murphy in both the *Lockman* and *Zimmerman* suits. (Doc. 338-1.) The arbitration panel further determined that Ballard was in breach of

2

its duty to defend and indemnify Murphy. (*Id.*) Ballard, as a third-party Plaintiff, brought claims against its insurer, Vigilant and Federal.

Vigilant issued a claims made Petroleum Industries Insurance Coverage Policy ("Vigilant Policy") and Federal issued a claims made Commercial Excess and Umbrella Policy ("Federal Excess Policy") to Ballard for the period of May 21, 2020 to May 21, 2021 ("Policy Period"). (Doc. 365 at 8-9.) Vigilant is Ballard's primary insurer. Federal is Ballard's excess insurer. Federal's Excess Policy follows the coverage provided by Vigilant's Policy, unless restricted in the language of the Federal Excess Policy.

Ballard sought coverage from Vigilant and Federal for the claims in *Lockman* and *Zimmerman*. Property owners located on or near the EPOF have filed the claims set forth in *Lockman* and *Zimmerman*. The *Lockman* and *Zimmerman* plaintiffs sought damages for remediation costs to the land caused by Murphy's contamination in the 1950s. Murphy sought indemnification for these claims from Ballard under the 2002 PSA. The *Lockman* claims settled. (Doc. 251.) The *Zimmerman* action remains pending. (Doc. 365 at 10.)

Vigilant and Federal have refused to pay the costs related to the *Zimmerman* suit and the Murphy arbitration. Federal has defended Ballard under a reservation of rights in the *Zimmerman* suit. (Doc. 365 at 10.) Ballard, Vigilant, and Federal dispute whether coverage exists under the Vigilant Policy or Federal Excess Policy.

Ballard seeks summary judgment that Vigilant and Federal are required to pay for Ballard's costs in the *Zimmerman* suit and the Murphy arbitration. (Doc. 350 and 352.) Vigilant and Federal seek summary judgment that Vigilant and Federal have no obligation to provide coverage to Ballard in the *Zimmerman* suit or the Murphy arbitration. (Doc. 365 at 36.)

## LEGAL STANDARD

Summary judgment proves appropriate when the movant demonstrates "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## ANALYSIS

Ballard argues that the Vigilant and Federal policies provide coverage of Murphy's tort liability in *Zimmerman*. (Doc. 350.) Ballard contends that Vigilant and Federal must provide coverage for Murphy's attorney fees, costs, and expenses in defending the *Zimmerman* suit. (Doc. 352, 376, and 377.) Vigilant and Federal contest whether coverage exists under the Vigilant Policy and Federal Excess Policy. (Docs. 365 and 390.) Vigilant and Federal argue no duty to defend or indemnify Ballard exists for either (1) the common-law contribution claim that

Murphy asserts against Ballard in *Zimmerman,* or (2) the contractual indemnity claim Murphy asserted against Ballard at arbitration. (Doc. 365 at 7.) The Court will examine each issue in turn.

## I.     Coverage under the Vigilant Policy

Under Montana law, "the insurer and insured hold respective burden of proofs in seeking the benefit of a particular policy provision (e.g. coverage, exclusions, and exceptions to exclusions)." *Nat'l Indem. Co. v. State*, 406 Mont. 288, 322–23 (2021). Ballard has the burden to establish coverage under the policy's insuring agreement. The burden shifts to Vigilant and Federal to establish the applicability of any exclusion. The burden then shifts back to Ballard to establish that any exception to the exclusion applies. *See id.; Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc*., 326 Mont. 174, 185 (2005).

Ballard must identify coverage under the coverage provisions found in the Vigilant Policy. (*See* Doc. 355, Exhibit 1 at 21-24.) The Vigilant Policy contains two coverage provisions that relate to pollution related liability, Off Site Pollution Liability and On-Site Pollution Liability. The Federal Excess Policy follows the form of the underlying policy, to the extent excess policy does not provide limited or differing coverage. The Federal Excess Policy will provide coverage if the underlying policy provides coverage, so far as the excess policy follows the form of the Vigilant Policy.

Ballard bears the burden to show that one of these coverage provisions of the Vigilant Policy applies here. Vigilant and Federal would then have the opportunity to establish that an exclusion precludes coverage. Ballard then may respond that a policy exception to the exclusion applies to provide coverage. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc*., 326 Mont. 174, 185 (2005).

### a. Murphy's common-law contribution claim

Vigilant asserts that Ballard would need to establish the following elements in order for coverage to be provided under the Off Site Pollution coverage provision: (1) a new claim arising from distinct release of pollutants from the EPOF; (2) the claims commenced after Vigilant's retroactive date of May 21, 2001; (3) the claim was unrelated to previous contaminations dating back to the 1950s; and (4) the claims for damages arose on "off-site" property. (Doc. 365 at 7-8.) Vigilant contends no such new, unrelated post-2001 claim exists to provide coverage. *Id*. The Court agrees.

Claims made insurance policies provide coverage for claims made during the policy period, "regardless of when the events that caused the claim to materialize first occurred." *Pension Trust Fund v. Fed Ins. Co*. 307 F. 3d 944, 955-956 (9th Cir. 2002) (citing *Burns v. Int'l Ins. Co*., 929 F. 2d 1422, 1424 n. 3 (9th Cir. 1991). Insurers may draft their policies to limit liability exposure by the inclusion of retroactive dates. *Pritchard v. Federated Mut. Ins. Co*., No. 93-2765-

6

TUA, 1995 WL 854775, at *9 (W.D. Tenn. Oct. 2, 1995). *Pritchard* explained that "[i]nsurers asked to issue claims-made policies protect themselves against liability for old occurrences by including a 'retroactive date' specifying the earliest occurrence to be covered, no matter when the claim is made." *Id.* (quoting *Nat'l Cycle, Inc. v. Savoy Reinsurance Co. Ltd.*, 938 F.2d 61, 62 (7th Cir. 1991)). Retroactive dates contained in claims made policies "restrict the scope of coverage to exclude coverage for claims arising from [] acts occurring prior to" that date. *Parkside/El Centro Homeowners Ass'n v. Travelers Cas. Ins. Co. of Am.*, 2023 U.S. Dist. LEXIS 54516 at *14 (S.D. Cal. 2023) (quoting *Fremont Indem. Co., Inc. v. California Nat. Physician's Ins. Co*., 954 F. Supp. 1399, 1403 (C.D. Cal. 1997)).

Murphy's claims against Ballard in connection to the *Zimmerman* suit arose during the Policy Period. It remains undisputed that Ballard timely tendered its claim to Vigilant and Federal during the Policy Period on December 3, 2020. The inclusion of a retroactive date in the Vigilant Policy limits Vigilant's insurance coverage to Ballard for Murphy's claims. (Doc. 355-1 at 22-24.); *Pritchard,* No. 93-2765-TUA, 1995 WL 854775, at *9.

The facts resemble *Pritchard*, where the insured purchased a claims made policy that contained an unambiguous retroactive date. No. 93-2765-TUA, 1995 WL 854775, at *9. The insurer in *Pritchard* issued a policy covering various properties under a claims-made pollution liability policy with a policy period of

7

November 1, 1987, to November 1, 1988. *Id*. The policy contained a retroactive date provision requiring that the covered pollution incidents "commence" after November 1, 1986. *Id*. Contamination was discovered at an insured facility in December 1987 that had been operating as a gas station for 20-30 years. *Id*. The insurec made the contamination claim during the policy period in December of 1987. *Id*. The insurer denied coverage because the insured failed to identify a pollution incident that caused the contamination having commenced after the retroactive date. *Id*.

    The insured sued, but the court granted summary judgment to the insurer. *Id*. at *12. The court rejected the insured's argument that the "pollution incident" commenced when the insured discovered it. *Id*. at *7. The court found that the policy "plainly states that only a pollution incident commencing after the retroactive date is covered by the Policy." *Id*. The insured had the burden to prove a discharge of pollutants had occurred after the retroactive date. I*d*. The insured failed to produce evidence to create a genuine issue of material fact warranting summary judgment in favor of the insurer. *Id*. "To prove that its claim falls within the terms of the Policy coverage, [Ballard] has the burden of showing there was a pollution incident that commenced after the retroactive date" of the Vigilant Policy. *Id*.

8

The Vigilant Policy for Off Site liability in the insuring agreement plainly states that the "pollution incident" must "commence" on or after May 21, 2001, ("Retroactive Date") for coverage to apply. Ballard does not dispute that the Vigilant Policy incorporates a Retroactive Date. (Doc. 356 ¶ 13.) Ballard has not established or created a genuine issue of material fact that the pollution incident in *Zimmerman* occurred on or after the Retroactive Date. The allegations in *Zimmerman* of pollution incidents relate to oil and gas operations by Murphy on the EPOF that occurred in the 1950s. (Doc. 365 at 25.)

The allegations in *Zimmerman* relate to the decades long knowledge Murphy possessed of the contamination but had failed to clean up. (*Id*.) The allegations in *Zimmerman* do not allege any unique contamination by Ballard or Murphy that commenced after May 21, 2001. (*Id*.) The EPA similarly identified that the pollution had occurred sometime before 1999-2000. Ballard contended throughout the proceedings that "the *Zimmerman* Plaintiffs do not seek recovery from Murphy due to Ballard's post-closing conduct" and that the *Zimmerman* claims relate to the matters outlined in the 1999-2001 EPA orders. (Doc. 365 at 26.) All pollution incidents at issue occurred before the Retroactive Date of May 21, 2001. Ballard has failed to meet its burden to show that a new pollution incident occurred on or after May 21, 2001.

9

Ballard argues that the pollution continued until after the Retroactive Date. The pollution occurring after Retroactive Date represented a failure by Murphy to remediate the same releases that had commenced in the 1950s. Vigilant's Policy defines "pollution incident" to include any "related pollution incidents" and "series of continuous, repeated or related pollution incidents." (Doc. 365 at 21.) All the pollution discharges happening after the Retroactive date constitute continuous, related discharges from the pollution commencement in the 1950s. Ballard failed to establish any genuine issue of material fact that a distinct, unrelated pollution incident had occurred after the Retroactive Date of May 21, 2001.

Ballard has not met its burden to show that the Off-Site Pollution Liability insuring agreement provides coverage. The Vigilant Policy's Retroactive Date of May 21, 2001, precludes coverage to Ballard for Murphy's contribution claims.

### b. Murphy's contractual indemnity claims

Vigilant contends that no coverage exists for Murphy's contractual indemnity claim for various reasons including that the On-Site Pollution liability coverage applies to pollution occurring on an "insured site" and that a contract exclusion applies. (Doc. 365 at 8.) Vigilant argues Ballard would need to establish that Ballard discovered the pollution incident with 30 days after the incident had commenced and Ballard had reported this pollution incident to Vigilant within 90 days of discovery. (*Id.*) Ballard contends that the exception to an exclusion under

the Vigilant Policy found in Section B.3 creates coverage. (Doc. 352.) The Court disagrees.

Ballard was notified of Murphy's claims in *Zimmerman* in November 2020. Ballard assumed liability and the obligation to indemnify Murphy for environmental liabilities in the 2002 PSA. Ballard agreed to indemnify Murphy for Murphy's operations. The *Zimmerman* claims involve pollution and contamination that occurred when Murphy was operating and owning the EPOF site from 1950 to the 1990s. The *Zimmerman* claims relate to the contamination that the EPA identified in 1999-2000 for which Murphy was responsible. Ballard did not own the land at the time the *Zimmerman* claims were alleged to have commenced. *Zimmerman* seeks restoration costs for the pollution that occurred on Murphy's land.

Ballard must establish that the pollution incident occurred at an "insured site" for coverage on the On-Site Pollution Liability coverage. The Vigilant Policy defines "[i]nsured site" as "that particular part of a site that you [Ballard] own, lease, or occupy and which is necessary to oil or gas exploration or production activities being performed by you or on your behalf . . ." (Doc. 365 at 32.) The pollution at issue in *Zimmerman* was not for liability from land owned by Ballard on the "insured site." The *Zimmerman* claims involve pollution of land that Murphy owned at the time of the pollution commencement, not land owned by

11

Ballard. The Murphy arbitration sought indemnification by Ballard for the pollution Murphy caused before Murphy sold the EPOF land to Ballard. Ballard agreed to indemnify Murphy for the claims arising prior to Ballard owning the land as an "insured site." Murphy alleged to the Arbitration panel that Ballard agreed to indemnify Murphy for its pre-closing contamination in exchange for a $2 million reduction in the purchase price. Ballard contends that it received the $2 million reduction to reflect the reduction to the oil reserves and changes in market prices, not to reflect an assumption of liability. Regardless, Ballard's assumption of Murphy's liability was for the pre-closing conduct by Murphy on the EPOF prior to Ballard owning the EPOF as an "insured site." (*See* Doc. 422.)

The On-Site Pollution Liability also contains a limitation that the pollution incident could not occur before the Retroactive Date of May 21, 2001, to obtain coverage. It remains undisputed that the pollution incident in *Zimmerman* occurred well before the Retroactive Date of May 21, 2001, as explained above. Coverage for Murphy's contractual indemnity claims is precluded.

"It is well-settled that an insurer's duty to defend the insured arises when an insured sets forth facts which represent a risk covered by the terms of the insurance policy." *Landa v. Assurance Co. of Am.*, 371 Mont. 202, 208 (2013). "[I]nsurers have a duty to defend unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage."

*Hutchinson v. Old Republic Nat'l Title Ins. Co.*, 563 P.3d 737, 742 (Mont. 2025). Ballard has failed to meet its burden in showing that coverage under the Vigilant Policy's insuring agreements applied to Murphy's contribution claim or the contractual indemnity claim. Vigilant has no duty to defend Ballard for either claim.

### c. Coverage under Vigilant Policy Section B.3's exception

Ballard contends that Vigilant must provide coverage under the Section B.3 "insured contract coverage" because Ballard assumed Murphy's liability in the 2002 PSA. (Docs. 352 at 23-25 and 396 at 12-13.) Ballard argues that the other coverage provisions, the Off-Site Pollution Liability and On-Site Pollution Liability, as discussed above, are irrelevant to the coverage inquiry. Vigilant counters that assertion by arguing that Section B.3 represents an exception to an exclusion, rather than a provision granting independent coverage to Ballard. (Docs. 390 and 365.)

Ballard relies on an exception to an exclusion contained in Section B.3 of the Vigilant Policy. (Doc. 355-1 at 55-58.) Section B.3 is found at the endorsement in the Vigilant Policy titled "Contract, Except Oil and Gas Contracts and Indemnity Contracts – Time Element Basis." (*Id.* at 55-58.) Section B.3 is included in the Vigilant Policy's exclusions section. (*Id.* at 55-56.) The exclusion provides that "[t]his insurance does not apply to any damages, loss, cost or expense the

13

insured is obligated to pay by reason of assumption of liability in a contract or agreement." (Doc. 356 at 5.) The Vigilant Policy contains the Section B.3 exception to this exclusion for those liabilities that were "assume[d] in an indemnity contract." (Doc. 356 at 5.)

An exception to an exclusion cannot provide coverage on its own or expand coverage. "An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies." *American Family. Mut. Ins. Co. v. American Girl, Inc.,* 673 N.W. 2d 65 (Wis. 2004). The Ninth Circuit described a court's analysis of determining coverage and the applicability of exclusions and exceptions as follows:

> [P]roper coverage analysis begins by considering whether the policy's insuring agreements create coverage for the disputed claim. If coverage exists, then the court considers whether any exclusions apply. If coverage does not exist, the inquiry ends. The exclusions are no longer part of the analysis because they cannot expand the basic coverage granted in the insuring agreement.
>
> The rule is no different for exceptions to exclusions. A "carve back" within an exclusionary provision merely restores already existing coverage. There is no cure for a lack of coverage under the insuring clause. Even if the effect of an exception is to render a particular exclusion inoperative, the insured must still prove the loss is covered.

*Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co*., 532 F.3d 1007, 1017 (9th Cir. 2008). The Fifth Circuit in *United Nat. Ins. Co v. Hydro Tank, Inc*., similarly

14

reasoned that an exclusion "cannot affirmatively grant coverage that would not otherwise exist under the policy." 497 F. 3d 445, 451-52 (5th Cir. 2007).

Section B.3 is not an insuring agreement in the Vigilant Policy. The Court, as determined above, found no coverage under the relevant Vigilant Policy insuring agreements. The Court could end its inquiry there. The Court will address the deficiencies of Ballard's coverage argument.

Section B.3, contained in the Exclusions section of the Vigilant Policy, represents an exception to an exclusion. Ballard's assertion that Section B.3 applies because of Ballard's indemnity contract with Murphy does not rescue Ballard from the lack of coverage. The Section B.3 exception cannot establish coverage that does not exist under the coverage provisions of the Vigilant Policy. Ballard correctly notes that Section B.3 would apply had Ballard first established coverage under an insuring agreement of the Vigilant Policy, as Ballard assumed indemnity liability for Murphy under the 2002 PSA indemnity contract. Section B.3 cannot on its own, however, provide affirmative coverage for Ballard. *Sony Computer Entm't Am. Inc.,* 532 F.3d at 1017. Ballard fails to show coverage under the insuring agreements in the Vigilant Policy applies, specifically because the pollution incidents of *Zimmerman* occurred before the Retroactive Date of the Vigilant Policy. The coverage inquiry ends there. Section B.3 does not provide Ballard another avenue to establishing coverage.

15

## II. Coverage under the Federal Excess Policy

"An excess policy general follows the form of the underlying primary coverage and is called 'following form' excess coverage, i.e., the excess has the same scope of coverage as the primary policy." *Coca Cola Bottling Co. v. Columbia Cas. Ins. Co.*, 11 Cal.App.4th 1176, 1182-83 (1992). An excess insurer will pay after the limits of the underlying policy have been exhausted. *Newmont USA Ltd. v. Am. Home Assur. Co.*, 795 F. Supp. 2d 1150, 1168 (E.D. Wash. 2011).

The Federal Excess Policy provides "follow the form" coverage meaning it will provide a second layer of excess coverage. Federal, as an excess insurer, must provide coverage only when the underlying policy covered the insured's liability. Federal's coverage applies when Vigilant's Policy provides coverage, as it follows the form of the underlying policy. Federal must defend on behalf of Ballard when the Vigilant Policy has been exhausted. It remains undisputed that the Vigilant Policy, as explained above, provides no coverage to Ballard for either of Murphy's claims. Federal has no duty to defend or indemnify Ballard for the same reasons outlined above.

## CONCLUSION

No coverage exists under the insuring provisions of the Vigilant Policy or the Federal Excess Policy. No coverage exists under the "carve back" exception of indemnity contracts within Section B.3. The *Zimmerman* pollution claims

commenced before the Retroactive Date of May 21, 2001. Vigilant and Federal have no duty to defend or indemnify Ballard as a matter of law.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that

1. Ballard's motion for summary judgment against Federal Insurance Company (Doc. 349) is **DENIED.**

2. Ballard's motion for summary judgment against Vigilant Insurance Company (Doc. 351) is **DENIED**.

3. Vigilant Insurance Company's and Federal Insurance Company's motion for summary judgment against Ballard (Doc. 364) is **GRANTED**.

4. Vigilant Insurance Company and Federal Insurance Company have no duty to defend or indemnify Ballard against Murphy's claims in *Zimmerman*.

DATED this 12th day of November 2025.

_____
Brian Morris, Chief District Judge
United States District Court