**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

MURPHY EXPLORATION & PRODUCTION COMPANY, et al.,

Third-Party Plaintiff(s),

v.

BALLARD PETROLEUM HOLDINGS, LLC, et al.,

Third-Party Defendant(s)

---

UNITED STATES FIDELITY AND GUARANTY COMPANY,

Intervenor Plaintiff / Counterclaim Defendant,

vs.

BALLARD PETROLEUM HOLDINGS, LLC,

Intervention Defendant/ Counterclaimant/Third-Party Plaintiff/Counterclaim Defendant,

vs.

VIGILANT INSURANCE COMPANY; and FEDERAL INSURANCE COMPANY,

Third-Party Defendants/ Counterclaim Plaintiffs,

Cause No.: 4:20-cv-00067-BMM

**ORDER ON EQUITABLE CONTRIBUTION AND SUBROGATION**

## INTRODUCTION

Ballard Petroleum Holdings, LLC ("Ballard") moves for summary judgment regarding its counterclaim for equitable contribution against United States Fidelity and Guaranty Company ("USFG"). (Doc. 469.) The Court allowed Murphy Exploration and Production Co. ("Murphy") to intervene to assert its property interests in its insurance policy with USFG. (Doc. 488.) Both USFG and Murphy oppose the motion regarding equitable contribution. (Docs. 480 & 491.) USFG cross moves for summary judgment regarding its subrogation rights against Ballard for USFG's right to recover the attorney fees USFG paid to Murphy. (Doc. 498.) The Court held a hearing on October 26, 2026. (Doc. 505.)

## BACKGROUND

Ballard and Murphy executed a 2002 Purchase and Sale Agreement ("2002 PSA") under which Ballard acquired Murphy's interests in the East Poplar Oil Field ("EPOF") in northeastern Montana. Ballard agreed to indemnify Murphy in the 2002 PSA. The Environmental Protection Agency ("EPA") identified environmental contamination caused by Murphy's oil and gas operations in the EPOF around 1999-2000. Property owners sued Murphy in 2020 for alleged pollution of the drill sites. (*See Zimmerman* Case No. 4:20-cv-68-BMM and *Lockman* Case No. 4:20-cv-00067-JTJ.)

Murphy tendered the property owner lawsuits to its insurer USFG. (Doc. 362 at ¶ 8.) USFG issued general liability insurance policies to Murphy from 1951-1991. (Doc. 362 at ¶ 1.) Murphy's insurance contracts with USFG in later years limited liability coverage at $1,000,000 per occurrence and $1,000,000 in the aggregate. (Doc. 357–32.) USFG's defense obligations under the insurance contracts remained "uncapped." (Doc. 441 at 8, n.2.)

USFG initially denied coverage of the property owner lawsuits in 2007 but later agreed in September 2021 to defend Murphy under reservation of rights from October 2020 forward. (Doc. 372 at ¶ 4; Doc. 362 at ¶ 9.) USFG further informed Murphy that a March 1995 settlement between USFG and Murphy had exhausted the property damage liability limits for several policies. (Doc. 361-3 at 3.) USFG declined to defend Murphy under those exhausted policies. (*Id.*)

Murphy brought a third-party claim against Ballard for defense and indemnification under the 2002 PSA. (*Lockman*, No. 4:20-cv-00067-JTJ, Doc. 23; *Zimmerman* No. 4:20-cv-68-BMM, Doc. 28.) An arbitration panel determined on January 4, 2023, that the 2002 PSA obligated Ballard to defend and indemnify Murphy in both the *Lockman* and *Zimmerman* suits. (Doc. 338-1.) The arbitration panel further determined that Ballard was in breach of its duty to defend and indemnify Murphy. (*Id.*) The arbitration panel later concluded that Ballard owed Murphy $2,768,381.45 for defense costs through April 30, 2023. (Doc. 362 at ¶ 26.)

The Court initially modified the arbitration award to interim damages and reduced the amount to $1,397,743.74 to avoid double recovery. (Doc. 404.) The Court later determined that USFG owed a primary duty to defend Murphy for claims in the *Lockman* and *Zimmerman* suits. (Doc. 412.) The Court further determined that both Ballard and USFG owed independent contractual obligations to Murphy. (*Id.* at 17.) The Court ordered that USFG must make Murphy whole before attempting to shift defense costs to Ballard or to seek arbitration. (*Id.*) The Court consequently modified the interim damages award for defense costs to $0 to reconcile the allocation and responsibility between Ballard and USFG. (Doc. 424 at 6.)

Murphy has paid $2,000,000 in settlement for the O'Connor claims from the *Zimmerman* suit. (Doc. 441 at 6.) Ballard alleges that it has paid $12,000,000 to indemnify Murphy in other *Zimmerman* settlements. (Doc. 447 at 7.) Ballard further alleges that it has paid $700,000 to indemnify Murphy in the *Lockman* settlements. (*Id.*) The arbitration panel awarded Murphy $2,000,000 against Ballard to indemnify Murphy for the O'Connor settlement on December 3, 2025. (Doc. 429 at 5; Doc. 434 at 2.) The arbitration panel further found that all arbitrable issues had been fully and finally decided. (*Id.*) The arbitration panel reaffirmed all previous orders and awards except as modified by the U.S. District Court. (*Id.*)

The Court confirmed the final arbitration award of $2,000,000 to Murphy for the O'Connor Settlement on March 20, 2026. (Doc. 453.) The Court determined that

Ballard owed an independent contractual obligation to indemnify Murphy for its losses and costs under the plain terms of the 2002 PSA between Murphy and Ballard for the EPOF (*Id*. at 8.) The Court ordered Ballard to reimburse Murphy $2,000,000 for the O'Connor Settlement plus prejudgment interest. (*Id*. at 14.) The Court further declined to determine USFG's subrogation rights until Murphy had been made whole. (*Id*.)

USFG alleges that it has complied with the Court's order to make Murphy whole for its defense costs by paying the full amount of Murphy's recent invoices. (Doc. 440 at 2–3.) USFG has paid to Murphy, or on its behalf, $8,935.097.65 for Murphy's attorney fees and litigation costs for this lawsuit, the companion *Zimmerman* lawsuit, Cause No.: 4:20-cv-0068-BMM (the "lawsuits"), and the Murphy-Ballard Arbitration. (Doc. 484 at 2.) USFG's total payment to Murphy includes $1,018,752.28 in attorneys' fees and litigation costs for the Murphy-Ballard Arbitration, bringing USFG's total payment to $7,916,345.37 in attorneys' fees and litigation costs for the Lawsuits. (*Id*. at 2-3.) Murphy and USFG contend Murphy has been made whole under Montana law. (*Id*. at 3.) Murphy further contends it has no objection and supports USFG's alleged contractual and common law right to subrogation against Ballard. (*Id*. at 4.) USFG now seeks subrogation against Ballard in the amount of $7,916,345.37. (Doc. 488.)

The Court later directed the Clerk of Court to enter a final judgment for Murphy and to dismiss Murphy from the action upon the parties' stipulation under Federal Rule of Civil Procedure 54(b). (Doc. 466 at 3.) Ballard and USFG remained in the action. The Court more recently granted Murphy's motion to intervene in the action for the sole purpose of presenting its views on equitable contribution. (Doc. 488.) Ballard now moves for summary judgment regarding its claim for equitable contribution against USFG. (Doc. 469.) USFG has filed a cross-motion for summary judgment against Ballard for attorney fees USFG paid to Murphy. (Doc. 498.)

## LEGAL STANDARD

A court may grant summary judgment when the movant demonstrates that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248. A court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovants favor when reviewing the record in deciding a summary judgment motion. *Tabares v. Huntington Beach,* 988 F.3d 1119, 1124 (9th Cir. 2021) (citations omitted).

Ballard filed a statement of undisputed facts in support of its motion for summary judgment on its claim for equitable contribution. (Doc. 470.) USFG filed its own statement of disputed and undisputed facts in conjunction with its brief in opposition to Ballard's motion for summary judgment on the claim for equitable contribution. (Docs. 480 and 481.) USFG also filed a stipulation as to facts surrounding the made whole doctrine and its subrogation claim. (Doc. 484.) USFG represented in its motion for summary judgment on its subrogation claim that no disputed material facts exist and it should be entitled to judgement as a matter of law. (Doc. 498.) USFG also filed a statement of undisputed facts regarding Ballard's claim for equitable contribution and USFG's claim for subrogation. (Doc. 500). Finally, Ballard filed a statement of disputed facts regarding USFG's claim for subrogation. (Doc. 502.) Ballard's disputed facts related to the 2002 PSA between Ballard and Murphy. The 2002 PSA speaks for itself and the Court will rely on the language of the 2002 PSA rather than the party's interpretation of the agreement.

The Court has reviewed these filing of disputed and undisputed facts. Any claims of disputed facts involve more interpretation of documents, such as the 2002 PSA, rather than any dispute about what happened or what party acted or failed to act in a particular manner. A "party cannot create a disputed issue of material fact by putting his own interpretations and conclusions on an otherwise

clear set of facts." *Koepplin v. Zortman Mining*, 881 P.2d 1306, 1311 (Mont. 1994). As a result, the Court determines that the motions before it may decided as a matter of law. Fed. R. Civ. P. 56(a).

**DISCUSSION**

Ballard contends that the following questions represent the only two issues remaining before the Court: (1) Ballard's equitable contribution claim for the $14.7 million it has paid in indemnity costs to Murphy (Doc. 471 at 12); and (2) USFG's subrogation rights for reimbursement of approximately $7,916,345.37 it has paid to Murphy for defense costs. (Doc. 484 at 5; Doc. 498.)

The right of subrogation derives from the rights of the insured. *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002). Subrogation further requires that the subrogee (USFG) establish that the other party (Ballard) remains primarily responsible for the loss. *In re Deuel*, 594 F.3d 1073, 1079 (9th Cir. 2010). Equitable contribution differs entirely from subrogation. *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303 (Cal. Ct. App. 1998). The party seeking contribution (Ballard) requests payment from a co-obligor (USFG) who shares such liability with the party seeking contribution. *Id*. Contribution does not derive from any rights of the insured. *Id*. The Court will address the two distinct remedies.

## I. Ballard's Equitable Contribution Rights

Ballard seeks declaratory relief that Ballard and USFG share the same obligation to indemnify Murphy for the $14.7 million in settlements. (Doc. 471 at 11–12.) Ballard requests that the Court answer "[t]he question of whether it is equitable and appropriate for Ballard and USFG to share the settlement burden." (*Id.* at 8.) Ballard argues that Ballard and USFG, each as an indemnitor to Murphy, must share the burden of the costs of settlement. (*Id.* at 8-9).

Ballard requests that the Court order equitable contribution between USFG and Ballard by allocating a third of the settlement costs ($4,900,000) to Ballard and two thirds ($9,800,000) to USFG. (*Id.* at 9.) "Equitable contribution 'is the right to recover, not from the party *primarily* liable for the loss, but from a co-obligor who shares such liability with the party seeking contribution.'" *Travelers Cas. & Sur. Co. v. Am. Intern. Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1026 (S.D. Cal. 2006) (*quoting Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1293 (Cal. Ct App. 1995) (emphasis in original)). "Unlike subrogation, the right to equitable contribution exists independently of the rights of the insured' and does not arise out of contract." *Travelers Cas. & Sur. Co.*, 465 F.Supp.2d at 1026 (emphasis in original).

The Court previously determined that USFG owed the primary obligation to pay Murphy's defense costs, but that USFG did not owe the primary obligation to indemnify Murphy for the underlying settlements. (Doc. 453 at 8.) Ballard argues

that this determination by the Court does not foreclose Ballard from seeking equitable contribution from USFG. (Doc. 471 at 14.) The Court agrees this determination does not preclude Ballard from seeking contribution. The Court must determine whether equitable contribution between Ballard, Murphy's contractual indemnitor, and USFG, Murphy's insurer, proves appropriate under these circumstances.

**A. Whether Ballard properly pleaded claims of equitable contribution.**

USFG and Murphy first argue that Ballard has no right to equitable contribution from USFG because Ballard failed to plead such a counterclaim. (Doc. 480 at 18; Doc. 491 at 7.) Ballard contends that it properly pleaded equitable contribution in the alternative by stating as follows:

> 21. Alternatively, Ballard is entitled to a judgment declaring that its contractual indemnity obligations to Murphy under the Ballard-Murphy PSA are no greater than USFG's contractual indemnity obligations to Murphy under its insurance contracts.

(Doc. 328 at 11.)

Ballard asserts that its request that the Court declare the "relative legal obligations of USFG and Ballard is a proper method of seeking contribution." (Doc. 494 at 5 (citing *New York v. Solvent Chemical Co., Inc.* 664 F.3d 22, 27 (2nd Cir. 2011)).) The Court agrees. Ballard's request asking the Court to declare the rights and other legal relations regarding the payment of indemnification costs between

Ballard and USFG involves an equitable apportionment of indemnification costs. *Solvent Chemical Co, Inc.*, 664 F.3d at 27.

The Court remains unpersuaded by USFG's argument that Ballard forfeited its right to seek contribution when Ballard stated in its pretrial statement that Ballard sought no damages from USFG. (Doc. 491 at 7.) Ballard does not necessarily seek damages from USFG under its theory of equitable contribution much like the court determined in *Maryland Cas. Co, v. Armco, Inc.*, 643 F. Supp. 430, 432 (D. Md. 1986). "Black letter insurance law holds that claims for equitable relief are not claims for 'damages' under liability insurance contracts." *Id*.

Ballard argues it pleads a declaratory action and seeks monetary relief supplemental to the declaration, as explicitly allowed by the Declaratory Judgment Act. 28 U.S.C. §2202. (Doc. 494 at 6.) Ballard's requested declaratory relief allows the court to "grant further relief as it deems necessary and proper to enforce the declaratory judgment." *Goodover v. Lindey's Inc*., 843 P.2d 765, 770 (Mont. 1992). The Court may declare that "contractual indemnity obligations to Murphy under the Ballard-Murphy PSA are no greater than USFG's contractual indemnity obligations to Murphy under its insurance contracts" as requested by Ballard. *Id*. The Court may require further equitable relief such as USFG owing Ballard a share of the indemnification costs as necessary to effectuate the declaratory judgment without Ballard having sought "damages" from USFG.

Both USFG and Murphy further argue that the Court "has already decided the issues posed by Ballard's motion." (Doc. 480 at 9; Doc. 491 at 6-9.) The Court's previous orders related to subrogation rights between the parties. (*See* Docs. 412 & 453.) Ballard's previous motion arose in subrogation based upon (1) USFG's primary obligation; and (2) the made-whole rule. (*See generally* Doc. 453.) The present issue before the Court now relates to contribution rights between USFG and Murphy.

The Court previously stated that "Ballard remains a third-party claimant who agreed to indemnify Murphy" and "Montana law generally prohibits a third-party claimant from pursuing a party's insurer before having established the insured party's liability." (Doc. 453, at 9 *citing Ulrigg v. Jones*, 907 P.2d 937, 943 (Mont. 1995).) These concepts interpreting USFG's policy language do not apply to Ballard's contribution counterclaim because contribution does not derive from a contract between indemnitors. *Interstate Fire & Cas. v. First Specialty Ins. Co.*, 482 F.Supp. 1060, 1087 (E.D. Cal 2020). Contribution instead applies to equalize the indemnity burden when indemnitors owe equal levels of obligation to indemnify a common party for the same risk. *Id*. For these reasons, the Court will proceed to address Ballard's claim for equitable contribution.

**B. Whether Ballard has met the elements for a claim of contribution.**

USFG and Murphy next contend that USFG and Ballard are not co-obligors who insured the same risk. (Doc. 491 at 8); (Doc. 480 at 7 *citing Lexington Ins. Co.* and *Cas. Indem. Exch. Ins. Co.,* 177 F. Appx. 572, 573 (9th Cir. 2006).) The Ninth Circuit in applying California law found that a party seeking equitable contribution needed to prove the following three elements: (1) that the co-obligors share the same level of obligation; (2) on the same risk; and (3) as to the same insured. *Lexington Ins. Co*, 177 F. Appx. at 573. The Court will apply these three elements, as the Montana Supreme Court has identified but has not yet applied the doctrine of equitable contribution. *See Essex Ins. Co. v. Acceptance Indem. Ins. Co*., 222 P.3d 645, (Mont. 2009).

No party disputes that Ballard and USFG owed obligations to Murphy. As a result, the Court need not discuss the third element in determining whether Ballard should be entitled to equitable contribution. *Lexington*, 177 F. Appx. at 573. Only the first and second elements of equitable contribution remain in dispute as the Court seeks to determine whether Ballard should be entitled to contribution from USFG. The Court's analysis will focus on these two elements of equitable contribution.

**1. Whether Ballard and USFG share the same level of obligation with respect to indemnity.**

USFG contends that Ballard's equitable contribution claim fails because Ballard and USFG do not share the same level of obligation and certainly do not insure the same risk. (Doc. 480 at 23.) The Court has found that "[b]oth Ballard and

USFG owed independent contractual obligations to Murphy." (Doc. 453 at 4.) USFG's acceptance of Murphy's tender pursuant to eighteen policies triggered USFG's coverage. (Doc. 383 ¶ 10.) USFG did not dispute its obligations under those policies. (*Id.*) Ballard argues that this triggering of USFG's duty to defend represents a threshold presumption of coverage. (Doc. 494 at 10-11, citing *Koppers Co. By Beazer E. v. Certain Underwriters at Lloyd's London*, 993 F. Supp. 358, 363 (W.D. Pa. 1998).)

Murphy argues that a tribunal has not yet determined whether USFG owes Murphy a duty of indemnification. (Doc. 491 at 14.) USFG has failed to seek adjudication of non-coverage under the relevant policies between USFG and Murphy. Ballard cites two cases in which courts in the District of Montana focused on whether the insurer's contractual obligations were triggered before settlement when determining the merits of equitable contribution. *XL Specialty Ins. Co. v. Progressive Cas. Ins. Co.*, 411 Fed. Appx. 78 (9th Cir. 2011) (Table); *Cas. Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co.*, 902 F. Supp. 1235, 1238 (D. Mont. 1995). USFG's duty to defend triggered and USFG has not disputed its defense obligations. (Doc. 383 ¶ 10.)

USFG has failed to show that USFG does not owe a duty to indemnify Murphy for the O'Connor, *Zimmerman*, and *Lockman* judgments. *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 461 (Mont. 2016). No authority supports the proposition that USFG

can avoid coverage by declining to adjudicate it. Insurers must seek a coverage determination to evade coverage once a claim has been tendered. *See, e.g, National Indemnity v. State*, 499 P.3d 516, 535 (Mont. 2021). *National Indemnity* recognized that "[a] declaratory judgment's purpose is to discern the extent of coverage under a policy so that an insurer may know the extent of its legal duties relative to the insured." *Id.* (citations omitted). USFG filed no declaratory judgment regarding the question of its coverage for Muphy's claims. The Court declines to conclude that USFG does not owe Murphy a duty of indemnification.

The Court finds that USFG and Ballard have litigated their indemnification duties for some time. USFG has been fully aware that its indemnification duties owed to Murphy have remained a material dispute in the current litigation. USFG has had five years to demonstrate that USFG's insurance contracts do not provide coverage to Murphy but has failed to present facts that prove otherwise. (Doc. 491 at 14) (USFG agreed to defend Murphy in 2021.) For these reasons, the Court declines to conclude that USFG does not owe a duty of indemnification to Murphy.

USFG further argues that comparing contractual language of the 2002 PSA between Ballard and Murphy with USFG's policy plainly demonstrates that USFG and Ballard do not stand as co-obligors. (Doc. 480 at 23-24.) USFG further asserts that the Court's previous ruling allowing USFG to seek to exercise its rights for subrogation proves USFG and Ballard do not insure the same risk on the same level.

Murphy cites the Court's order that states "the Court has made no determination on USFG's duty to indemnify Murphy." (Doc. 453 at 8 citing (Doc. 412).) The Court finds these arguments unpersuasive as the Court finds both USFG and Ballard fall under the same obligation to indemnify Murphy for its damages triggered under both USFG's insurance policy and the 2002 PSA between Murphy and Ballard.

USFG further argues the language of the 2002 PSA obligates Ballard, without condition, to defend, indemnify, and hold Muphy harmless with respect to the environmental property damage at the specific locations involved in the lawsuits. (Doc. 480 at 23-24.) USFG further contends that this language results in a higher level of obligation for Ballard to indemnify Murphy. (*Id.*) The Court finds that the language of the 2002 PSA does not obligate Ballard to a higher level of obligation to indemnify Murphy.

The 2002 PSA simply imposes a duty of indemnification upon Ballard. USFG fails to point to Montana law supporting its argument that the 2002 PSA imposes a higher burden of indemnification on Ballard as opposed to USFG simply because of its contractual terms. The Court concludes that Ballard's contractual indemnity obligations to Murphy under the 2002 PSA prove no greater than USFG's contractual indemnity obligations to Murphy under its insurance contracts. The Court finds that Ballard satisfies the first element for equitable contribution. *Lexington Ins. Co*, 177 F. Appx. at 573.

**2. Whether USFG and Ballard indemnified Murphy for the same risks.**

The risk at issue represents the landowners' lawsuits against Murphy. Ballard argues that when USFG conceded its duty to defend Murphy, it resulted in the landowners' claims falling within the scope of USFG's policies. (Doc. 494 at 13.) Ballard further argues that USFG has failed to refute whether its policies provide coverage for the landowner lawsuits. (*Id*.) "If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1101, 1105 (Mont. 2020). USFG bore the burden of establishing that exclusions or conditions limited the coverage provided by the policies. *Fire Ins. Exch. v. Weitzel*, 371 P.3d at 461. The Court finds that USFG has failed to refute whether the relevant policies provide coverage to Murphy.

USFG further argues that Ballard fails to point to law establishing that a general liability insurer insures the same risk as a contractual indemnitor. (Doc. 480 at 26.) USFG supports this argument by citing law demonstrating that equitable contribution typically occurs between co-insurers of the same policyholder. (Doc. 480 at 27.) USFG specifically cites *Pylon, Inc. v. Olympic Ins. Co.*, 271 Cal. App. 2d 643, 648-49 (Cal. App. 4th 1969), for the proposition that a contractual indemnitor and an insurer fail to hold the same risk. (Doc. 480 at 28.) *Pylon* involved a general contractor, an insurance company, and another party. *Id*. at 646-47. Pylon,

the general contractor, agreed to indemnify Toups, another contractor, in the construction of a sewage pump station. *Id*. at 646. Two Pylon employees sustained severe injuries while working on the jobsite. *Id*. at 647. The Pylon employees sued Toups, but Toups had a general liability insurer in Olympic. *Id*. Pylon then requested Olympic to pay for some of the damages. *Id*. at 648. The California court held that Pylon and Olympic failed to qualify as co-insurers of the same risk. *Id*. at 649.

Pylon's indemnity contract with Toups called for indemnity of damages relating to the very specific job performed by Pylon. *Id*. at 646. The indemnification provision of the 2002 PSA calls for indemnification of much more than one specific job. (Doc 371-4 at 26.) The 2002 PSA obligates Ballard to "indemnify, defend, and hold harmless" Murphy "against all claims, demands, damages, obligations, costs, other liabilities (including attorney's fees), and causes of action, including any civil fines, penalties or cost of cleanup, brought by any and all persons . . . on account of any damage, destruction or loss of property." (Doc. 371-4 at 24.) The 2002 PSA indemnification provision proves much broader than one single job. The California court simply analyzed the specific language of the relevant indemnity provision to conclude that the contracts addressed different risks. *Pylon*, 271 Cal. App. 2d at 648. The California court never reached the issue of the three present elements of equitable contribution. *Id.* For these reasons, the Court declines to follow the reasoning of the California court in *Pylon*.

USFG's insurance contracts and Ballard's 2002 PSA, pursuant to its plain language and as interpreted by the Arbitration Panel, require indemnification of Murphy for the landowner lawsuits. The Court finds that both USFG's insurance contracts and Ballard's 2002 PSA require indemnification of Murphy for the same risk regarding the landowner lawsuits. *Lexington Ins. Co*, 177 F. Appx. at 573. The Court finds that the current facts establish that Ballard meets the requirements of equitable contribution. *Id.* The Court must now decide the equitable method of allocating USFG's and Ballard's indemnification costs to Murphy.

**C. The Court's allocation of indemnification responsibility of Murphy based upon equitable principles.**

The touchstone in weighing the equities with respect to contribution is "justice, equity and good conscience." *Schaefer v. Safeco Ins. Co. of Ill.*, 320 P.3d 967, 970 (Mont. 2014). USFG urges the Court to reject Ballard's argument that Ballard acted more equitably than USFG. (Doc. 480 at 29.) The Court has determined that USFG "collected premiums from Murphy to cover the full costs of any liability incurred by Murphy throughout the policy period" and USFG "collected these premiums and assumed these liabilities for many years before Murphy entered the 2002 PSA with Ballard." (Doc. 412 at 7.)

USFG argues that Ballard caused losses for Murphy and this fact should tip the equities in favor of USFG. (Doc. 480 at 31.) The Arbitration Panel found that Ballard had "breached" a duty to defend Murphy. (Doc. 338-1). Ballard argues that

the Court's subsequent rulings now have confirmed no such "breach" ever occurred. (Doc. 494 at 15.) The Court finds it relevant that Murphy paid USFG premiums for decades. USFG and Ballard separately contracted with Murphy to indemnify Murphy for the landowner suits.

The Court concludes that equity favors neither party. USFG collected premiums for decades for compensation directly related to the risks that they endured when they insured Murphy. In the alternative, Ballard also took on a risk when Ballard purchased the leasing rights for the property from Murphy through the 2002 PSA. Ballard should have known of prior contamination when Ballard purchased the property as evidenced by the EPA's identification of environmental contamination caused by Murphy's oil and gas operations in the EPOF around 1999-2000. Ballard presumably calculated the risk of the indemnification provision. The Court concludes that equity does not result in Ballard paying for almost the entire costs of defending Murphy. Justice would not be served if Ballard were required to pay all of Murphy's indemnification costs when both Ballard and USFG assumed the same risks. The Court will now proceed to the allocation regarding contribution.

**D. The Court's allocation of Equitable Contribution.**

The Court has equitable discretion "to select a method of allocating . . . based on the facts and circumstances of the particular case[.]" *Am. States Ins. Co. v. Ins. Co. of Pa.*, 800 Fed. App'x 452, 454 (9th Cir. 2020) (citations omitted). Ballard

recommends the "time-on-the-risk" approach. *Clarendon Nat. Ins. Co. v. Nat'l Fire and Marine Ins. Co*., 512 Fed. App'x 671, 673 (9th Cir. 2013). Ballard contends USFG does not dispute that it has been "on the risk" for decades, providing policies covering claims for 72 years since 1954. (Doc. 494 at 16.) Ballard's time on the risk is limited to the year of 2002 when it signed the PSA. (*Id*. at 17.) Ballard urges the Court to adopt the following allocation: USFG should bear two-thirds of the indemnity loss while Ballard bears one-third of the $14.7 million loss, thereby resulting in an allocation of $4,900,000 to Ballard and $9,800,000 to USFG. (*Id*.)

The Court notes that Ballard's time on risk was limited to the 2002 PSA. The 2002 PSA did not simply provide Ballard with the duty to indemnify Murphy for any claims. Ballard also received the right to develop Murphy's leases at the EPOF. Ballard presumably calculated the risks and rewards of this endeavor when it agreed to the 2002 PSA. As a result, the Court finds that allocating the indemnity loss 50 percent to USFG and 50 percent to Ballard represents the most equitable outcome. USFG has been at risk for decades through the annual insurance policies that it issued to Murphy. Ballard agreed to purchase Murphy's property subject to the indemnification provision through the 2002 PSA. Neither Ballard nor USFG should be required to pay the entire $14.7 million loss. Ballard's recommendation puts too much of the costs on USFG. The Court concludes that USFG and Ballard should

bear equally the $14.7 million indemnity loss, with USFG being responsible for $7,350,000 and Ballard being responsible for $7,350,000.

## II. USFG's Subrogation Rights.

Ballard contracted to defend, indemnify, and hold harmless Murphy for environmental contamination claims in the EPOF without limitation. (Doc. 499 at 23.) Ballard agreed to the indemnification provision with knowledge that contamination existed. (Doc. 499 at 24.) The Court previously delayed the adjudication of USFG's subrogation rights against Ballard until Murphy had been made whole. (Doc. 412 at 17.) USFG has since made Murphy whole and now asks this Court to conclude that Ballard must pay $7,916,345.37 to USFG to cover the amount that USFG paid for Murphy's attorneys' fees and litigation costs. (Doc. 499 at 5.) The Court previously held that (1) Montana law provides that "[a]n insurer who has indemnified its insured usually is subrogated to the insured's rights of recovery against a third party who is responsible for the loss;" and (2) "the fortuitous circumstance of additional insurance cannot, in good conscience, permit [a contractual indemnitor] to avoid its duties under its contract." (Doc. 281 at 9 *citing Van Orden v. United Servs. Auto. Ass'n*, 318 P.3d 1042, 1045 (Mont. 2014)); (Doc. 453 at 12 *citing Borough of Wilkinsburg v. Trumbull-Denton Joint Venture*, 568 A.2d 1325, 1327 (Pa. 1990).)

USFG describes its subrogation rights as "crystal clear" given that Ballard's obligations to defend, indemnify, and hold Murphy harmless under PSA have been confirmed by an arbitration panel and are not contingent on the availability of insurance. (Doc. 499 at 5 (citing Doc. 453).) USFG contends that Montana law proves that the costs paid by USFG were definitively owed by Ballard and that USFG may recover those payments through subrogation. (Doc. 499 at 8.) USFG further argues Ballard remains the party responsible for Murphy's loss and under its policies, in the event of "any payment," USF&G is subrogated to Murphy's rights of recovery against any party. (*Id.*)

"Subrogation acts as an equitable device 'designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it.'" *Johnson v. State Farm Mut. Auto. Ins. Co.*, 574 P.3d 898 (Mont. 2025) (*quoting Skauge v. Mountain States Tel. and Tel. Co.* 565 P.2d 628, 630 (Mont. 1977)). Subrogation rights are created by contract, statute, or common law (equity). *Couch on Insurance, Third Edition*, § 226:6; *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002). An insurer who has indemnified its insured usually is subrogated to the insured's rights of recovery against a third party who is responsible for the loss. *Johnson*, 574 P.3d at 543-44 (*citing Skauge*, 565 P.2d at 630).

USFG first argues that the insurance contract between USFG and Murphy contractually entitles it to subrogation against Murphy. (Doc. 499 at 15.) The USFG policy between USFG and Murphy contains the following subrogation provision:

> In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefore against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(Doc. 499 at 15.)

This policy provision allows USFG to subrogate against Ballard, but the provision fails to dictate the terms of such subrogation. *DeTienne Associates Ltd. Partn. V. Farmers Union Mut. Ins. Co.*, 879 P.2d 704, 708 (Mont. 1994). The policy provision here and the policy provision in *DeTienne* present similar language. *Id.* at 707. USFG argues that Ballard's citation to *DeTienne* does not change anything because Murphy already has been made whole and *DeTienne* fails to say anything about comparing the equities between the insured and the responsible party. (Doc. 503 at 13.)

USFG asserts that only two limitations exist on the insurer's right to subrogation: (1) the made whole doctrine; and (2) the principle that, given the derivative nature of subrogation, the subrogated insurer stands in the same position as the subrogor insured and does not acquire by subrogation rights that the subrogor insured did not have. (Doc. 499 at 17 *citing Van Orden v. United Services Auto*

*Ass'n,* 318 P.3d 1042, 1045 (Mont. 2014); *St. Paul Fire & Marine Ins. Co. v. Glassing*, 269 Mont. 76, 887 P.2d 218, 220-21 (Mont. 1994).) USFG represented that no disputed facts existed regarding its claim for subrogation and also filed a stipulation to that effect regarding application of the made whole doctrine. (Docs. 484 and 498.)

Ballard points to a third limitation for equitable subrogation requiring that the subrogee (USFG) establish that the subrogor (Ballard) stands primarily responsible for the loss. (Doc. 501 at 8 *citing Nimmick v. State Farm Mut. Auto. Ins. Co.,* 891 P.2d 1154, 1159 (Mont. 1995).) The Ninth Circuit further requires that the party seeking subrogation establish that the subrogor remains primarily responsible for the loss. *In re Deuel*, 594 F.3d 1073, 1079 (9th Cir. 2010). Regardless of the *DeTienne* ruling, Montana law requires USFG to prove that Ballard remains "primarily responsible" for the defense costs. *Nimmick*, 891 P.2d at 1159.

Ballard argues that the Court already has determined and re-affirmed that USFG's duty to defend Murphy remains primary although both Ballard and USFG owed independent contractual duties to defend Murphy in the Landowner Lawsuits. (Doc. 413 at 17; Doc. 424 at 4; Doc. 453 at 4.) Ballard further argues the Court already has determined and twice reaffirmed that "Ballard does not owe a primary obligation to Murphy for defense costs." (Doc. 453 at 4; Doc. 412 at 16; Doc. 424 at 5.) Montana law establishes that the terms of an insurance policy may create

fiduciary duties owed to their insureds. *Suzor v. International Paper Co.*, 386 P.3d 584, 589-90 (Mont. 2016).

USFG argues that what the Court made "primary" was USFG's obligation to advance Murphy's defense while expressly preserving USFG's right later to seek subrogation from Ballard once USFG had made Murphy whole. The fact that the Court allowed USFG to seek its subrogation rights does not weigh either in favor or against USFG's subrogation rights. USFG supports its assertion for subrogation rights by citing case law that determines specific contractual indemnitors first must pay before general liability insurers. (*See* Doc. 499 at 18-27.)

The question the Court ultimately must determine remains whether Ballard should be deemed the "primarily responsible" party for the defense costs. If the party against whom subrogation is sought does not remain the primarily responsible party, then the subrogee's subrogation claim fails. *Nimmick,* 891 P.2d at 1159. Both USFG and Ballard have independent contractual obligations to defend Murphy. (Doc. 453 at 4.) Each of the parties' contracts controls the rights and obligations of each party. As explained by Ballard, USFG's multiple insurance contracts with Murphy establish that USFG owes independent duties to defend Murphy in the Landowner Lawsuits, irrespective of Murphy's contract with Ballard. (Doc. 412 at 17.) Ballard's 2002 PSA with Murphy similarly establishes that Ballard owes independent duties to defend Murphy, irrespective of Murphy's insurance contracts. (*Id.*)

USFG cites *Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal.App.4th 23, 105 (Cal. App. 2010), in arguing that the contractual indemnitor (Ballard) bears a greater responsibility than the general insurer (USFG). Webcor was a general contractor, and Cleveland was a subcontractor for a construction project in San Francisco. *Id*. at 610-11. An indemnification agreement between Cleveland and Webcor obligated Cleveland to indemnify Webcor for damages arising out of or in connection with Cleveland's operations. *Id*. Cleveland's employees essentially played a role in causing injuries in the underlying claim. *Id*. at 611. Webcor settled with the plaintiff and Webcor's insurance provider sued Cleveland for subrogation. *Id*. at 612. Cleveland refused to pay Webcor's insurer even though Cleveland had taken part in causing the loss. *Id*. at 612, 616. The California court allowed Webcor's indemnification claim to proceed based on the allegations that Cleveland in large part caused the loss relevant to the underlying claim. *Id*. at 620.

The Court declines to follow the reasoning in *Cleveland* due to the many factual differences from the present dispute. Ballard and Murphy were not contractors performing work on the same project. Ballard did not cause the underlying damage. In fact, much of the damage likely occurred even before Ballard purchased the land as evidenced by EPA's determination in 1999-2000 of contamination at the EPOF. Ballard must be deemed "primarily responsible" for the loss for USFG to seek subrogation against Ballard. *Nimmick,* 323 891 P.2d at 1159.

The Court finds that USFG has failed to prove that Ballard qualifies as the party "primarily responsible" for the loss. Ballard agreed to indemnify and defend Murphy under the 2002 PSA and USFG insured Murphy under its many insurance contracts. The Court concludes that subrogation represents an improper remedy to award to USFG against Ballard because USFG fails to establish that Ballard stands "primarily responsible" for the loss. *Nimmick,* 891 P.2d at 1159.

## CONCLUSION

No genuine issues of material fact exist regarding Ballard's claim for equitable contribution. The Court grants Ballard's claim for equitable contribution. The Court determines that equity requires that USFG be responsible for $7,350,000 and Ballard be responsible for $7,350,000 of the $14.7 million indemnity loss. (Doc. 469.) The Court also finds that no genuine issues of material fact exist regarding USFG's claim for subrogation. USFG has failed to demonstrate its entitlement to subrogation against Ballard. The Court denies USFG's claim for subrogation as a matter of law. (Doc. 498.)

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that the Court **GRANTS, in part, and DENIES in part,** Ballard's claim for equitable contribution. (Doc. 469.) USFG and Ballard each shall be responsible for covering $7,350,000 of the

$14,700,000 indemnity loss. The Court **DENIES** USFG's claim for subrogation. (Doc. 498.)

DATED this 20th day of November, 2026.

Brian Morris, Chief District Judge
United States District Court